**Paul W. BROWN, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner, Social Security Administration, Defendant.**

**Civil Action No. 93–40090–NMG.**

United States District Court, D. Massachusetts.

May 22, 1996.

---

80. *Mozur,* 600 F.Supp. at 782 (internal citations omitted).

Steven E. Zlochiver, Legal Assistance Corporation of Central Massachusetts, Worcester, MA, for Plaintiff.

Charlene A. Stawicki, United States Attorney's Office, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Pending before this Court is a review of the final decision of the Commissioner of Health and Human Services ("the Commis-

sioner") under the Social Security Act, as amended, 42 U.S.C. § 405(g). In that decision, the Commissioner denied to the plaintiff, Paul W. Brown ("Brown"), Supplemental Security Income benefits based on disability ("SSI") under the Social Security Act ("the Act"), as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3).

On January 23, 1989, Mr. Brown filed an application for SSI. His application was initially denied on April 5, 1989, and again on Reconsideration on December 14, 1989. On December 28, 1989, Mr. Brown filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On August 28, 1990, an ALJ considered the case *de novo,* and determined that Mr. Brown was not disabled. The Appeals Council remanded the case to the ALJ, ordering him to *obtain vocational expert testimony,* and to provide a rationale for the weight the ALJ assigned to various treating and examining sources. The ALJ again considered the case *de novo,* and in a decision dated January 31, 1992, found that Mr. Brown was not disabled. On August 7, 1992, the Appeals Council denied Mr. Brown's request for review. That decision rendered the January 31, 1992 ALJ decision the final decision of the Commissioner, subject to review by this Court. *See Da Rosa v. Secretary of Health and Human Services,* 803 F.2d 24, 25 (1st Cir.1986).

Mr. Brown seeks a reversal of the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g), which provides, *inter alia,* that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing." Mr. Brown contends that the final decision of the Commissioner was 1) not supported by substantial evidence, and 2) contrary to law. Mr. Brown therefore requests that this Court either reverse the decision of the Commissioner, or remand the case for reconsideration of the impact of his anxiety, arthralgia, and fibrositis on his residual functional capacity ("RFC").[1] For the

reasons stated herein, the decision of the Commissioner will be vacated and remanded.

## I. BACKGROUND

Mr. Brown was born on February 24, 1942. Between 1961 and 1978, he was variously employed as a research technician, physical science aid, and a self-employed horticultural salesman. From 1977 to 1978, he was employed as a survey specialist. Between 1978 and 1980, he worked as a security guard for various employers. Between 1981 and 1985, he was unemployed, but tended to his ailing father. In late 1985, Mr. Brown returned to college, seeking an associates degree in agricultural business management from the University of Massachusetts, Stockbridge School of Agriculture.

In October, 1986, rheumatologist Dr. James McGuire diagnosed Mr. Brown with right arm weakness, chronic right upper quadrant pain, and chronic mild anxiety. Dr. McGuire stated that Mr. Brown was functionally limited in that he could not lift anything with his right arm, and his ability to walk was impaired. Also in October, 1986, clinical psychologist Dr. Robert E. Dean diagnosed Mr. Brown with hypochriasis and an atypical personality disorder.

Mr. Brown completed his degree in January, 1988. In May, 1988, he began a six-month stint as a part-time volunteer receptionist for the Massachusetts Division of Employment Security. In July, 1988, psychiatrist Dr. Chand Bhan diagnosed Mr. Brown with a generalized anxiety disorder.

In February, 1989, Dr. Bhan believed that Mr. Brown could not maintain full-time employment. In March, 1989, Dr. B.K. Thomas diagnosed Mr. Brown with fibrositis syndrome. Dr. Thomas soon thereafter submitted a report to Disability Determination Services ("DDS") stating that Mr. Brown had previously suffered from an acute duodenal ulcer and acute gastritis in 1985. Dr. Thomas further reported that the ulcer and gastri-

---

1. For purposes of this decision, the Court has relied upon the entire administrative record, the defendant's memorandum in support of her motion for an order affirming the decision of the

Commissioner, and Mr. Brown's memorandum in support of his motion to remand the decision of the defendant.

tis were successfully treated with no significant after-effects.

On April 3, 1989, a DDS physician issued a disability determination, based upon records submitted by Drs. Bhan and Thomas, the Worcester City Hospital, and the Massachusetts Rehabilitation Commission. The DDS physician found that although Mr. Brown had an anxiety disorder and a personality disorder, these disorders did not involve marked restrictions of the activities of daily living, marked difficulties in maintaining social functioning, or frequent deficiencies of concentration, persistence, or pace. The reports further indicated that Mr. Brown was not significantly limited in his understanding, memory, and social interaction, but he was moderately limited in his sustained concentration, persistence, and adaptation skills. The DDS physician concluded that Mr. Brown's condition prevented him from returning to work as a security guard, and that he was unable to perform certain kinds of work. Finally, the report stated that an assessment of Mr. Brown's RFC was necessary.

Between May and July, 1989, Dr. Thomas continued to diagnose a spastic colon and anxiety. On June 11, 1989, Mr. Brown began working as a security guard. Mr. Brown testified that as a security guard, his duties consisted of "sitting in a car and observing any crimes that would happen and calling in to [his] supervisor if something did happen." The job later involved "opening and closing gates for people and checking them out." In an August 4, 1989 letter, Dr. Bhan related that Mr. Brown had informed him that he was starting to like his security guard job, and did not experience any anxiety while at work. Mr. Brown had further reported that his overall anxiety was low, his memory was improving, and he had been feeling more hopeful and optimistic. Dr. Bhan opined that although Mr. Brown was able to work at that time, his long-term prognosis of Mr. Brown's ability to work remained undetermined.

On August 6, 1989, Mr. Brown was interviewed by C.A. Blum, a Social Security examiner. Mr. Brown informed the examiner that he cooked his own meals, washed dishes daily, swept his floors, washed his laundry at a laundromat, shopped for groceries, and paid his own bills. Mr. Brown also testified at his hearings before the ALJ that he attended church every week, he shopped regularly, exercised by walking every day, and did household chores (i.e., cooking, taking his laundry to a laundromat, tending to houseplants, sweeping the floor, cleaning the table, dusting, washing light dishes, and washing the floors). On a "Supplemental Interview Form" regarding his activities of daily living, Mr. Brown stated that he visited his cousin daily and "help[ed] him work on cars."

On August 14, 1989, a second DDS physician issued a disability determination, based upon previously submitted records and the August 6, 1989, letter from Dr. Bhan. The second DDS physician also found that Mr. Brown had anxiety and personality disorders. He made the same findings regarding Mr. Brown's activities of daily living, social functioning, concentration, persistence, pace, understanding, memory, social interaction, sustained concentration, persistence, and adaptation skills. The DDS physician further noted that 1) medical evidence showed that Mr. Brown suffered from difficulties in concentration, 2) DDS needed more information to evaluate Mr. Brown's weak muscles and arthritis, and 3) Mr. Brown had been asked to attend a special exam at DDS expense and that, by failing to attend, he had "failed to cooperate." [2]

In September, 1989, Dr. Neil Aronin treated Mr. Brown for possible hyperparathyroidism. Dr. Aronin ordered more tests to be performed and, in November, 1989, concluded that Mr. Brown's parathyroid glands need not be removed. Between late 1989 and August, 1990, Dr. Thomas continued to diagnose Mr. Brown with fibrositis syndrome.

2. Although 20 C.F.R. § 404.1518(a) states that "[if a claimant is] applying for benefits and do[es] not have a good reason for failing or refusing to take part in a consultative examination or test which [is] arrange[d] for [him] to get information need[ed] to determine [his] disability or blindness, we may find [him] not disabled or blind," the Commissioner failed to raise that issue before this Court.

Mr. Brown's employment as a security guard was terminated on January 19, 1990 because, according to his "Termination of Employment" form, he was "unable to continue to perform job duties due to ongoing illness." According to the "Medically Excused Absence" form submitted to Mr. Brown's employer by Dr. Thomas, Mr. Brown was to be excused from work on 12/29/89. Mr. Brown testified that his arthritis had worsened from "getting in and out of the car," and his anxiety was affected by the stress resulting from questioning individuals who wished to enter the area which he guarded.

On August 10, 1990, Dr. Bhan, in a letter to Mr. Brown's counsel, reported that Mr. Brown was not capable of holding gainful employment, and should be considered disabled. On August 20, 1990, clinical psychologist Dr. Stuart J. Clayman administered numerous mental health tests and diagnosed Mr. Brown as suffering from a generalized anxiety disorder, depression, and a panic disorder, all of which would last at least twelve months. Dr. Clayman reported that Mr. Brown's mental RFC reflected an impaired ability to relate to people, problems with concentration and memory, and an inability to perform simple tasks on a routine basis.

Dr. James P. Figueroa, in a letter dated August 26, 1990, stated that between February, 1989 and August, 1990, Mr. Brown suffered from arthralgia,[3] along with various other ailments. Dr. Figueroa stated that he could not clear Mr. Brown for any sustained level of work. On August 27, 1990, Dr. Mark R. Blais diagnosed Mr. Brown with neuritis of the big toe. Dr. Blais stated that this condition was disabling, but easily treated with the use of prescription shoes. Mr. Brown testified that he used prescription shoes pursuant to Dr. Blais' recommendation.

Between Fall, 1990 and September, 1991, Dr. Bhan's clinical notes indicate that Mr. Brown continued to experience periods of depression and anxiety. Finally, in a letter dated June 17, 1991, Dr. Figueroa stated that he was not optimistic regarding Mr. Brown's

recovery, and that Mr. Brown still could not be medically cleared for any sustained level of work.

## II. ANALYSIS

### A. Standard of review

█ Pursuant to 42 U.S.C. § 405(g), review of a final decision of the Commissioner is limited. Factual findings by the Commissioner must be affirmed if they are supported by substantial evidence in the record and are in accordance with the law. *Id.; Irlanda Ortiz v. Secretary of Health and Human Services*, 955 F.2d 765, 769 (1st Cir.1991). This Court "must uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole could accept it as adequate to support [her] conclusion." *Irlanda Ortiz*, 955 F.2d at 769 (quoting *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir.1981)). *See also Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

█ Even if the record could be perceived to support other conclusions, the final decision of the Commissioner must be upheld if supported by substantial evidence. *Rodriguez Pagan v. Secretary of Health and Human Services*, 819 F.2d 1, 3 (1st Cir.1987), *cert. denied*, 484 U.S. 1012, 108 S.Ct. 713, 98 L.Ed.2d 663 (1988). It is the responsibility of the Commissioner, not the reviewing court, to determine issues of credibility, draw inferences from the record and resolve conflicts in the evidence. *Irlanda Ortiz*, 955 F.2d at 769; *Evangelista v. Secretary of Health and Human Services*, 826 F.2d 136, 141 (1st Cir.1987).

### B. Legal analysis

#### 1. Disability determination

█ To establish an entitlement to disability benefits, the burden is on the claimant to prove that he is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 146–47 & n. 5, 107 S.Ct. 2287, 2293–94 & n. 5,

---

**3.** Arthralgia is defined as pain in a joint or joints. *Schmidt's Attorney's Dictionary of Medicine,*

96 L.Ed.2d 119 (1987); *Deblois v. Secretary of Health and Human Services,* 686 F.2d 76, 79 (1st Cir.1982). Under the Act, a person suffers from a disability when he is unable to engage in any substantial gainful activity due to a medically determinable condition likely to result in death or to continue for at least twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), and 1382(a)(3)(A). Numerous provisions of the Act emphasize the requirement that medical evidence confirm the existence of the alleged disability. *See, e.g.,* 42 U.S.C. §§ 416(i)(1), 423(d)(1), (3), (5), and 1382c(a)(3)(A).

■ Furthermore, a claimant is not guaranteed disability benefits merely because he suffers from a medically verifiable impairment. Not only must the claimant be unable to perform his past work, but, given his age, education and work experience, he must be unable to "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Bowen,* 482 U.S. at 142, 107 S.Ct. at 2291–92; *McDonald v. Secretary of Health and Human Services,* 795 F.2d 1118, 1120 (1st Cir.1986); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

In evaluating Mr. Brown's application for SSI, the ALJ applied the familiar and well-established five-step process enumerated in 20 C.F.R. § 404.1520. With respect to the first three steps of the sequential evaluation, in the case at bar, the ALJ found, and Mr. Brown does not dispute, that 1) Mr. Brown was not engaged in substantial gainful activity at the time of his application, 2) Mr. Brown suffered from a severe impairment, and 3) that Mr. Brown's severe impairment was not listed in, or equivalent to, an impairment listed in 20 C.F.R., Part 404, Subpart P, App. 1.

### 2. *Residual functional capacity*

The ALJ determined that Mr. Brown was "not disabled" at step four of the sequential evaluation process because his RFC permitted him to return to his past work as a security guard. Furthermore, the ALJ found that even if Mr. Brown was disabled at step four, he was "not disabled" at step five because his RFC, coupled with his age, edu-

cation, and work experience, permitted him to work as a file clerk or packer. The issue for this Court to resolve is whether the ALJ's findings were supported by substantial evidence in the record and in accordance with the law. This Court will consider steps four and five in turn.

#### a. *Step four*

■ Having found no disability in the severity of the impairment based upon medical evidence alone, the ALJ proceeded to step four of the analysis and evaluated the requirements of Mr. Brown's past work in terms of his RFC. *See* 20 C.F.R. § 404.1520(b), (c) and (d).

The initial burden at step four was on Mr. Brown to show that his impairments prevented him from working as a security guard. *See Manso–Pizarro v. Secretary of Health and Human Services,* 76 F.3d 15, 17 (1st Cir.1996). He was required to provide information both about the activities his usual work required and how those activities were compromised by his functional inability to perform that work. *See id.* at 16–17.

Mr. Brown carried his burden by testifying about his security guard duties and how his impairments impacted upon those duties. Specifically, Mr. Brown testified that as a security guard, his duties consisted of "sitting in a car and observing any crimes that would happen and calling in to [his] supervisor if something did happen." The job later involved "opening and closing gates for people and checking them out." Mr. Brown further testified that his arthritis worsened from "getting in and out of the car" and that his anxiety was affected by the stress resulting from questioning individuals who wished to enter the area which he guarded.

The ALJ then was required to compare the physical and mental demands of security guard work with Mr. Brown's then-current RFC. *Id.* at 17. Although the ALJ made no specific finding about the demands of security guard work, he heard testimony from a vocational expert ("VE") who characterized that work as skilled or semi-skilled, requiring sedentary to light physical exertion. The ALJ was entitled to rely on the testimony of Mr. Brown and the VE as an indication of

the requirements of Mr. Brown's past work. *See Gonzalez Garcia v. Secretary of Health and Human Services,* 835 F.2d 1, 3 (1st Cir.1987).

The ALJ concluded that Mr. Brown was able to perform his past work as a security guard because 1) he could perform light work as defined in 20 C.F.R. § 416.967(b), and 2) he suffered from no nonexertional limitations. The ALJ's finding cannot be upheld, however, because there is no evidence in the record indicating that Mr. Brown could work as a security guard despite the limitations imposed upon him by his anxiety.

The ALJ determined that Mr. Brown suffered from severe anxiety. Difficulty in functioning due to anxiousness is a nonexertional limitation. 20 C.F.R. § 416.969a(c)(1)(i). Reports from three treating mental health professionals concluded that Mr. Brown's anxiety prevented him from working at any job. Moreover, a report prepared by a DDS physician and submitted by the Commissioner indicated that Mr. Brown's anxiety prevented him from returning to work as a security guard.[4]

In finding Mr. Brown's anxiety not to limit security guard work, the ALJ substituted his own assessment of Mr. Brown's mental impairment in favor of all other medical evidence. Because "[i]t is common ground that an ALJ is not free to substitute his own judgment for uncontroverted medical opinion," *Rose v. Shalala,* 34 F.3d 13, 18 (1st Cir.1994), this Court must vacate the Commissioner's decision that Mr. Brown was "not disabled" at step four of the sequential evaluation process.

b. *Step five*

■ In addition to finding Mr. Brown "not disabled" at step four, the ALJ proceeded to the final step of the sequential evaluation process and evaluated Mr. Brown's RFC, age, education and work experience. *See* 20 C.F.R. § 404.1520(f)(1). The Commissioner bore the burden of proving that a significant number of jobs existed in the national economy that Mr. Brown could perform. *Ortiz v.*

*Secretary of Health and Human Services,* 890 F.2d 520, 524 (1st Cir.1989).

In the case at bar, the ALJ found that Mr. Brown had the RFC to at least perform the physical exertion requirement of the full range of sedentary work. Implicit in this finding is the conclusion that Mr. Brown could perform all jobs within that category because he did not suffer from nonexertional limitations. Indeed, the ALJ specifically found that Mr. Brown's anxiety did not significantly reduce the range of unskilled jobs he was capable of performing. As stated above, however, there is no medical evidence in the record which could support the conclusion that Mr. Brown's anxiety did not qualify as a nonexertional limitation.

Furthermore, although Mr. Brown testified that he could "lift twenty pounds," there is no medical evidence in the record to support the ALJ's conclusion that Mr. Brown could perform the full range of sedentary work. To the contrary, all medical evidence in the record supports the conclusion that Mr. Brown's arthralgia and fibrositis rendered him unable to perform any work on a sustained basis. The Commissioner failed to submit evaluations of Mr. Brown's physical RFC prepared by DDS physicians.

■ The uncontroverted medical opinion reflected in the record was that Mr. Brown's fibrositis and arthralgia prevented him from working at any job. As stated above, the ALJ could not substitute his assessment of Mr. Brown's impairments in favor of uncontroverted medical opinion. *Rose,* 34 F.3d at 18. None of the medical evidence of Mr. Brown's arthralgia and fibrositis, however, was in the form of a functional assessment. "[W]here an ALJ reaches conclusions about claimant's physical exertional capacity without any assessment of [RFC] by a physician, the ALJ's conclusions are not supported by substantial evidence and it is necessary to remand for the taking of further functionary evidence." *Perez v. Secretary of Health and Human Services,* 958 F.2d 445, 446 (1st Cir. 1991). This Court, therefore, will remand the case to the Commissioner for the taking

---

4. In addition, the VE testified that Mr. Brown's anxiety prevented him from returning to work as a security guard.

of further functionary evidence relating to the impact of Mr. Brown's fibrositis and arthralgia on his RFC.

### c. *VE testimony*

■ Although this case is remanded for the foregoing reasons, this Court will, in order to fully consider the issues raised by the parties, address Mr. Brown's objection to the hypothetical posed to the VE. The ALJ based his decision that Mr. Brown was not disabled at step five based on the testimony of the VE. The ALJ sought to determine whether Mr. Brown could work anywhere in the national economy by posing the following question to the VE:

> So, hypothetically, if I were to take a person who had the physical residual functional capacity to do ordinary house work at a nonstressful pace, that is, they would dust one day, . . . wash the floors once a week, do the dishes, which he would find heavy work but is able to complete that, is able to drive an automobile, do his own shopping, cook for himself, someone who had that degree of physical capacity and who had the mental capacity to complete . . . a program at the University of Massachusetts, Stockbridge School of Agriculture and to deal with those stresses sufficiently to be able to complete the program . . . [w]ould someone with that degree of background be qualified to perform other types of work than the jobs which the claimant has performed in the past?

That hypothetical impermissibly omitted any mention of the significant functional limitations imposed by Mr. Brown's anxiety. Because the hypothetical did not mention anything about the anxiety from which Mr. Brown allegedly suffered, or its possible effect on the hypothetical person's RFC, and because the medical evidence in this case did indicate such an effect, the ALJ could not rely on the VE's response as a basis for finding Mr. Brown not disabled. *See, e.g., Rose*, 34 F.3d at 19; *Arocho v. Secretary of Health and Human Services*, 670 F.2d 374, 375 (1st Cir.1982) ("in order for a [VE's] answer to a hypothetical to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities.").

On remand, therefore, the ALJ's hypothetical to the VE must include mention of the impact of anxiety similar to that from which Mr. Brown suffered on the RFC of the hypothetical person. Furthermore, the ALJ must determine whether the jobs which Mr. Brown is able to perform, if any, are available in significant number in the national economy.

## III. CONCLUSION

Based upon the foregoing considerations, this Court finds that the Commissioner's decision that Mr. Brown was "not disabled" at step four of the sequential evaluation process is not supported by substantial evidence, because there was no medical evidence in the record to support the conclusion that Mr. Brown's anxiety did not prevent him from returning to work as a security guard. The Commissioner's decision to deny disability benefits to Mr. Brown at step four is, therefore, VACATED.

Furthermore, this Court finds that the Commissioner's decision that Mr. Brown was "not disabled" at step five of the sequential evaluation process is not supported by substantial evidence, because the Commissioner's conclusion that Mr. Brown's RFC did not prevent him from performing the full range of sedentary work was not supported by substantial evidence. The Commissioner's decision to deny disability benefits to Mr. Brown at step five is, therefore, VACATED and the case will be remanded for the taking of further functionary evidence regarding the effects of Mr. Brown's fibrositis and arthralgia on his physical RFC.

### ORDER

For the foregoing reasons, this Court finds that the Commissioner's final determination is not supported by substantial evidence on the record. Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

SO ORDERED.