USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 95-1241  VICTORIA MANSO-PIZARRO, Plaintiff, Appellant, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Salvador E. Casellas, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Selya and Lynch, Circuit Judges. ______________ ____________________ Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief for ______________________ _________________________ appellant. Guillermo Gil, United States Attorney, Maria Hortensia Rios- _____________ _______________________ Gandara, Assistant United States Attorney, and Donna C. McCarthy, _______ __________________ Assistant Regional Counsel, Department of Health and Human Services, on brief for appellee. ____________________ February 8, 1996 ____________________ Per Curiam. Claimant Victoria Manso-Pizarro was ___________ fifty-eight years old when she applied for social security insurance benefits on September 5, 1991. She alleged that a heart condition, high blood pressure and bad circulation had disabled her from working since June 24, 1991. After a hearing, an Administrative Law Judge (ALJ) concluded that claimant suffered from hypertension, obesity, and mild anxiety, but that she could still perform her last previous job. Upon judicial review, a magistrate judge recommended affirming the ALJ's decision. The district court agreed. The claimant appeals. We vacate and remand for further proceedings. I. _ We must uphold a denial of social security disability benefits unless "the Secretary has committed a legal or factual error in evaluating a particular claim." Sullivan v. Hudson, 490 U.S. 877, 885 (1989). The ________ ______ Secretary's findings of fact are conclusive if supported by substantial evidence. See 42 U.S.C. 405(g); see also ___ ___ ____ Richardson v. Perales, 402 U.S. 389, 401 (1971). __________ _______ There is substantial record evidence that claimant met her initial burden to provide enough information about the activities her usual work required and how those activities were compromised by her functional inability to perform that work. Claimant has a twelfth-grade education and worked for twenty-two years as a kitchen helper in a public school cafeteria. Her duties included serving children, preparing milk, washing dishes and trays, helping the cook, and cleaning the floor. The job required her to stand or walk for six hours a day, to sit for one-half hour, and to lift and carry up to thirty pounds (including, on occasion, lifting and carrying large, hot cooking pots). She described her work as fairly heavy and stated that she could no longer perform it because: she lacked the strength to lift anything heavy; she had limited ability to lift and carry because her hands cramped due to bad circulation; she had blurry vision and became dizzy when bending; and she could not stand for very long due to pain on her left side and in her feet. Upon this foundation, the ALJ supportably concluded that claimant's past relevant work involved medium physical exertion, and required her alternately to walk or stand for six hours, to lift or carry up to thirty pounds. This finding implicated step four of the Secretary's sequential evaluation process. See 20 C.F.R.  ___ 404.1520(e). At step four the initial burden is on the claimant to show that she can no longer perform her former work because of her impairments. See Santiago v. Secretary ___ ________ _________ of HHS, 944 F.2d 1, 5 (1st Cir. 1991). At that point, the ______ ALJ must compare the physical and mental demands of that past work with current functional capability. See id.; see also ___ ___ ___ ____ -3- 20 C.F.R. 404.1560(b). In making a step four appraisal, the ALJ is entitled to credit a claimant's own description of her former job duties and functional limitations, see id., ___ ___ but has some burden independently to develop the record. See ___ id. at 5-6. ___ In this instance, the ALJ decided that claimant retained the residual functional capacity (RFC) to perform her past relevant work as a cook's helper. In comparing claimant's retained capacities with the mental and physical demands of her prior work, the ALJ concluded that because the record indicated no physical restrictions limiting her ability to alternately walk or stand for six hours, or to lift up to thirty pounds, claimant's RFC coincided with her past relevant work activities.1 The claimant argues that in 1 making this RFC assessment, the ALJ impermissibly interpreted raw medical evidence, and instead should have obtained an RFC assessment by a physician. The Secretary disagrees. She contends that the non-severity of claimant's impairments entitled the ALJ to make a commonsense RFC assessment and that the ALJ, in finding that claimant retained the RFC to perform medium-level exertion, did not overstep the bounds of lay competence.  ____________________ 1The ALJ deemed it "advisable" to limit the claimant to a 1 medium work level of exertion. See generally 20 C.F.R.  ___ _________ 404.1567(c) (medium work involves lifting no more than 50 pounds at a time with frequent carrying or lifting of objects weighing up to 25 pounds). -4- II. __ With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record. See Perez v. Secretary of HHS, 958 F.2d 445, ___ _____ ________________ 446 (1st Cir. 1991); Gordils v. Secretary of HHS, 921 F.2d _______ _________________ 327, 329 (1st Cir. 1990). Of course, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment. See, e.g., id. But when, as now, a claimant has sufficiently ___ ____ ___ put her functional inability to perform her prior work in issue, the ALJ must measure the claimant's capabilities, and to make that measurement, an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person. Santiago, 944 F.2d at 7. ________ Here, the record contains no analysis of functional capacity by a physician or other expert. Thus, the question whether substantial evidence supports the ALJ's finding that claimant retains the functional capacity to do medium-level work and otherwise perform her prior vocational activities depends on a qualitative assessment of the medical evidence that was before the ALJ. If that evidence suggests a relatively mild physical impairment posing, to the layperson's eye, no significant exertional restrictions, then -5- we must uphold the ALJ's finding; elsewise, we cannot (in the absence of an expert's opinion). See Perez, 958 F.2d at 446- ___ _____ 47; Gordils, 921 F.2d at 329. It is to that perscrutation _______ that we now turn. III. ___ On June 27, 1991, three days after she stopped working, claimant saw Dr. Ruiz for chest pain, dizziness and palpitations. Dr. Ruiz diagnosed her as having high blood pressure and premature ventricular contractions.2 Although 2 he prescribed medication, the claimant's condition worsened and he hospitalized her on July 6. She was placed in the intensive care unit. Tests showed ventricular tachycardia (an abnormally rapid ventricular rhythm, most commonly associated with atrioventricular dissociation, see Dorland's, ___ supra, at 1655), frequent PVCs, premature arterial _____ contractions, and some evidence of paroxysmal atrial tachycardia (a condition marked by sudden onset and cessation of rapid cardiac rate in the atrial locus, Dorland's, supra, _____ at 655).3 The principal diagnosis was ventricular 3 tachycardia. Coexisting admission diagnoses included premature ventricular beats, hyperthyroidism, excess calcium  ____________________ 2Premature ventricular contractions (PVCs) are "often 2 indicative of organic heart disease." Dorland's Illustrated _____________________ Medical Dictionary 363 (28th ed. 1994). __________________ 3Several other entries in the record are illegible. 3 -6- and uric acid in the blood, moderate dehydration, and two other illegible conditions. During the claimant's twelve-day hospital stay, seven electrocardiograms combined conclusively to show sinus tachycardia. Two chest x-rays revealed an enlarged heart. No fewer than five physicians were asked to consult.4 A 4 July 8 consultation report related a diagnostic impression of sinusal tachycardia and a history of arterial hypertension. The discharge summary is mostly unreadable. It indicates, however, that the claimant's laboratory, chemical profile, and radiology tests were not within normal limits. The prognosis was described as "fair." Claimant was released on a regime of medication and extremely limited physical activity. Dr. Ruiz saw the claimant as an out-patient in July and August, and again in January of 1992. At the August visit, he found her chest pain to be precipitated by hyperthyroidism with supraventricular tachycardia and occasional episodes of ventricular tachycardia. He diagnosed her as suffering from hyperthyroidism with associated hypertensive cardiovascular disease, ventricular and atrial tachycardia, and PVCs. He noted other adverse conditions,  ____________________ 4Four of the consulting physicians' reports (Dr. Gonzalez 4 -July 7; Dr. Guerra - July 8; Dr. Rodriguez - July 10; and Dr. [illegible] - July 11) are, like many other record entries, inscrutable not because of copy quality but because the handwriting is not intelligible. -7- but they are unreadable. During that same month, the claimant was also evaluated at the State Insurance Fund. Tests showed cardiomegaly, an elongated aorta with a calcified knob, and multifocal PVCs. On November 26, 1991, the claimant was seen by Dr. Medina-Ruiz, the Secretary's consulting cardiologist. At that point, the claimant's chief complaints were fatigue, lack of energy, cramping of the legs, palpitations and numbness. The physical examination and associated tests revealed many of the same heart-related problems. Dr. Medina-Ruiz's diagnostic impression included a finding of hypertensive cardiovascular disease. On June 13, 1992, the claimant was hospitalized for three days due to high blood pressure, headaches and blurred vision. The diagnosis was hypertensive crisis and renal insufficiency. She improved with medication and was discharged with a one-week restriction of activities.  IV. __ Putting aside the many unreadable entries in the medical evidence,5 those reports otherwise unambiguously 5 indicate the existence of medical conditions and symptomatology that do not appear, at least without further  ____________________ 5In this case, the unreadable entries may have some 5 import. We think that it is the duty of the ALJ, on remand, to make some effort to decipher them. -8- evaluation by an expert, to be so mild as to make it obvious to a layperson that the claimant's ability to perform her particular past work as a cook's helper was unaffected. The Secretary acknowledges that the record shows cardiac abnormalities and other serious conditions. Even if we were to conclude that substantial evidence documented no more than mild physical impairments with relatively insignificant exertional loss, the record here is sufficiently ramified that understanding it requires more than a layperson's effort at a commonsense functional capacity assessment. See ___ Gordils, 921 F.2d at 329 (limiting ALJ's assessment of _______ claimant's functional capacity to sedentary work activities only). To sum up, given the illegibility of non-trivial parts of the medical reports, coupled with identifiable diagnoses and symptoms that seem to indicate more than mild impairment, we believe that the record alerted the ALJ to the need for expert guidance regarding the extent of the claimant's residual functional capacity to perform her particular past employment. See Perez, 958 F.2d at 447; ___ _____ Santiago, 944 F.2d at 4; Gordils, 921 F.2d at 329. ________ _______ We need go no further. Since the ALJ's conclusion that the claimant can continue to do her prior medium-level work is not readily verifiable on the record as it stands, we -9- think that the case must be remanded to the Secretary for additional evidence of functional ability.6 6 The judgment of the district court is vacated and _______ the case is remanded with directions to remand to the ________ Secretary for further proceedings consistent with this opinion.  ____________________ 6Because we remand for further development of the record, 6 we do not reach the other arguments advanced by the claimant on appeal. -10-