Concepcion RIVERA, Plaintiff,

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**Civil No. 96–1437 (PG).**

United States District Court,
D. Puerto Rico.

Jan. 24, 1997.

Louis A. de Mier–LeBlanc, San Juan, P.R., for Plaintiff.

José Vázquez, Assistant U.S. Attorney, Hato Rey, P.R., for Defendant.

### OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

#### 1. Introduction

This is an action brought under section 205(g) of the Social Security Act ("the Act"), as amended, 42 U.S.C. § 405(g) (1994), to review the decision of the Commissioner of Social Security (the "Commissioner"), which denied Plaintiff's application for a period of disability and disability insurance benefits.

The U.S. Magistrate Judge rendered a report recommending that the Commissioner's decision be affirmed. No opposition was filed thereto.

#### 2. Question Presented and Standard of Review

■ The question presented is whether the Commissioner's determination is supported by substantial evidence on the record as a whole. Under the standards established in the Act, the reviewing court may not substitute its judgment for that of the Commissioner. The findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g); *Manso–Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15, 16 (1st Cir.1996). We are therefore bound only to ascertain whether the Commissioner's decision is supported by substantial evidence from the record as a whole. *Irlanda Ortiz v. Secretary of Health and Human Services*, 955 F.2d 765, 769 (1st Cir.1991).

#### 3. Background

Plaintiff Concepción Rivera is now fifty-five years of age. He has previously worked in construction. He alleges he became unable to work beginning August 7, 1984 due to ulcers and HIV. He last met his insured status on March 31, 1985.

Plaintiff filed an application for a period of disability and disability insurance benefits on July 21, 1994. It was denied initially and upon reconsideration.[1] Following a hearing before an Administrative Law Judge ("ALJ") at which Plaintiff testified,[2] the ALJ found Plaintiff not to be disabled because he did not have a medically determinable impairment on or before March 31, 1985, his date last insured ("DLI"). The Appeals Council denied the request for review, rendering the ALJ's decision the final decision of the Commissioner.

#### 4. Discussion

In order for Plaintiff to be eligible for disability benefits, he must provide evidence of his disability between the alleged onset date (August 7, 1984) and his DLI (March 31, 1985). His subjective complaints cannot provide the basis of entitlement when they are not supported by medical evidence. 42 U.S.C. § 423(d)(5)(A); *Avery v. Secretary of Health and Human Services*, 797 F.2d 19, 20–21 (1st Cir.1986); *Winn v. Heckler*, 762 F.2d 180, 182 (1st Cir.1985).

■ The record contains no evidence that would sustain a finding of disability. The only reference to any condition within the relevant period of time is Plaintiff's own report that he was hospitalized in September 1984 for a bleeding ulcer. There is no record from the hospital or any physician documenting this episode, nor is there any indication that it was disabling under the meaning of the Act.[3] Everything else reported by Plain-

---

1. A prior application filed in December 1987 was also denied. Since the prior record could not be located, however, the ALJ did not apply res judicata in the present case.

2. Plaintiff was not represented by counsel at the hearing. He obtained counsel at a later point, in April 1995, after the hearing decision but prior to

the Appeals Council's decision, which came down on February 26, 1996.

3. The Act defines disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for

tiff is from before the alleged onset date or after his DLI, and none of it is supported by records from a medical source, with the single exception of a letter from Dr. Angeles Rodríguez stating that Plaintiff has been a patient of the Carolina Regional Hospital Immunological Center since August 1993, due to a condition associated with HIV.[4]

The evidence following the DLI cannot reasonably be related back to 1984–85. Plaintiff was diagnosed as HIV-positive in 1987, but there is no indication that he was symptomatic then or prior to that time. He stated that his doctors have not forbidden any activities and have told him to work according to his strength. During the hearing, Plaintiff did mention some subjective complaints of stomach discomfort, weight loss, diarrhea, vomiting, dizziness and headaches, and the record also contains his claims that he can no longer clean the yard or do gardening, and that driving exhausts him; however, without any medical record to back them up, they cannot form the basis for entitlement.

### 5. Actions by Plaintiff's Counsel

The review would come to a close at this point; however, the Court considers it necessary to address the troubling manner in which Plaintiff's counsel has argued this appeal. This has included misrepresentations of the record and arguments with no basis in the record.

Counsel argues that the "record is permeated by various complaints and symptoms such as pain, of physical and mental origin; nervousness, side effects of medication, etc." Counsel does not refer to the record, and it is simply not the case that any such complaints "permeate" it. Not only is there no reference at all to pain of mental origin or to nervousness, physical symptoms were only mentioned at the hearing (once when Plaintiff complained of stomach discomfort and having lost weight, again when he said he

gets diarrhea, vomiting, dizziness and headaches, and finally, when he said he would get dizzy and fall if he got up on a roof to work), and once in the disability report, where he wrote that driving exhausts him. This does not constitute "permeating" the record (which is hardly surprising, since there is not much of a record to permeate).

Counsel also argues at some length that his "greatest difficulty" is that the ALJ impermissibly found that Plaintiff had the residual functional capacity ("RFC") to perform all work without an RFC assessment completed by a treating or examining source, and that it is "essential that the raw medical data be translated by a medical expert...." The ALJ, however, had no occasion to make any such assessment on her own, because she found that Plaintiff did not have a severe impairment. The ALJ's analysis ended at Step II; RFC assessments do not become relevant until Step IV, when it has already been determined that the claimant has a severe impairment. The ALJ did not and could not have taken it upon herself to interpret raw medical data, because there are no medical records.

Counsel also adds that an expert is particularly important when there might be RFC assessments in a prior file that "the ALJ chose to ignore and/or did not secure." He then expounds on an ALJ's responsibility to make every reasonable effort to help the claimant obtain his medical records, suggesting that the ALJ failed to do so. The record reveals, however, that the ALJ made reasonable efforts to obtain the prior file, explained repeatedly to Plaintiff that he needed to obtain more evidence, gave Plaintiff an additional twenty days to obtain medical records, told him what types of records would be useful, told him several times to contact her if he needed more time, advised him that he might obtain an attorney or others to help him, and asked him to have anybody who assisted him contact her. It is also false that

---

a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1).

4. Plaintiff reports having been hospitalized for a bleeding ulcer in 1975 and testified at the hearing that he was hospitalized three or four times for ulcers in the '70's, when he was still working.

He was hospitalized for thrombophlebitis in 1987. He also reports having been seen in 1993 and 1994 for ulcers and HIV and having been treated with AZT, Maalox, Tagamet, and multivitamins.

Plaintiff "attempted to provide the Commissioner with information and the names of various doctors and institutions that had treated him since before the Date Last Insured, but the ALJ would not let him finish." (Citing the hearing transcript at 31–32.) This does not appear from the cited transcript pages or from any other part of the record; moreover, Plaintiff had ample opportunity after the hearing to furnish any information relevant to his claim.

Counsel also states that the ALJ "ignored the fact that the plaintiff even needed surgery. This is uncontroverted. The opinions of the evaluating and treating physicians from 1981 to the present were ignored." Counsel does not point to, and the Court has not been able to find, any mention in the record that Plaintiff ever needed surgery, and there are no opinions of any physicians in the record. Nowhere do any "physicians . . . suggest that plaintiff is unable to work in a sustained manner as a result of the combination of impairments."

Counsel suggests that on remand, the ALJ should undertake a full-scale investigation into Plaintiff's medical history and status despite the fact that neither Plaintiff nor his counsel have, throughout this entire process, offered a single medical record or report from any medical source other than the brief, "to whom it may concern" letter from Dr. Rodríguez. Counsel even goes so far as to state that "the ALJ should investigate the possibility of a mental impairment as the basis for alleged symptoms and receive proper testimony from a vocational expert to clarify the effect of nonexertional limitations on the plaintiff's potential occupational base" despite the fact that there has not been even the slightest suggestion that Plaintiff has had any mental impairment.

In short, Counsel continually misrepresents the record and makes foundationless arguments. He repeatedly makes reference to what the "medical evidence" discloses when there is no such evidence in the record. Counsel maligns the ALJ's performance, suggesting that she has substituted "her own impression of [Plaintiff's] health for uncontroverted medical opinion," has "set [her] own expertise against that of a physician who personally examined claimant," and even prevented Plaintiff from furnishing information and the names of doctors that had treated him.

If the evidence Counsel describes indeed exists, he would have served his client better had he expended his time and effort procuring that evidence and presenting it to the Commissioner for consideration, as he had the opportunity to do while the claim was pending before the Appeals Council, rather than wasting this Court's time with a baseless appeal while repeatedly misrepresenting the record in the process. The Court strongly admonishes Counsel, short of imposing sanctions, that this behavior will not be tolerated in the future.

### 6. Conclusion

The Court finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the Court approves the Magistrate's Report and Recommendation and the Commissioner's decision is hereby **AFFIRMED.**

**IT IS SO ORDERED.**