Ingram v. SSA                    CV-96-049-M    01/27/97

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Douglas B. Ingram

        v.                                        Civil No. 96-49-M

Shirley Chater, Commissioner
Social Security Administration


                            O R D E R


     Douglas Ingram seeks review, pursuant to 42 U.S.C.A.
§ 405(g), of a final decision by the Commissioner of the Social
Security Administration denying his application for benefits.
The Commissioner moves to have her decision affirmed.  For the
reasons that follow, the Commissioner's decision is reversed and
the matter is remanded for further proceedings.


                         **BACKGROUND**[1]

     Ingram filed an application for social security benefits on
October 26, 1993, stating that he had been unable to work since
June 2, 1993, due to pain from back and neck problems.  He has a
tenth grade education, and past work experience as a mechanic and
a forklift operator.  At the time of his application, Ingram was
forty-one years old.

     Ingram was first examined by Dr. Lewis Ashcliffe, a
chiropractor, on June 12, 1993, who diagnosed a sacroiliac,
lumbar, and thoracic strain or sprain which was complicated by

_____

        [1]  The facts are taken from the parties stipulated facts
submitted pursuant to LR 9.1(d).

preexisting arthritis in his back.  Dr. Ashcliffe stated that Ingram could continue to do work which did not require lifting more than fifteen pounds or repetitive twisting or bending motions.  He thought Ingram would be fully recovered within three to four months.

A physical therapy examination three weeks later on July 2 provided a similar prognosis.  An examination by Dr. Hoke Shirley, an orthopaedic specialist, also on July 2, showed normal neurological signs, a fairly full range of motion in his spine, and only mild tenderness.  Dr. Shirley diagnosed mechanical lumbar pain, and recommended treatment with an arthritis medication and physical therapy.  He thought that Ingram would be out of work for one more month.

Ingram was examined on July 28, 1993, by Dr. William Davison, an orthopedic surgeon, as requested by the workers' compensation carrier.  Dr. Davison diagnosed degenerative arthritis of the spine.  He concluded that Ingram was capable of light duty work that did not require lifting more than 20 pounds or prolonged standing or walking and would be able to return to work in a month.  Dr. Shirley's follow-up examination on August 2 found no change in Ingram's condition and also that he would not be able to return to work for a month.

The physical therapy progress notes and chiropractic treatment notes during August indicate some progress in Ingram's condition.  Dr. Ashcliffe, the chiropractor, again noted that Ingram was capable of light duty work and expected him to return

2

to his prior work.  His examination by Dr. Shirley on September 2, 1993, revealed some slight back pain with certain tests.  Dr. Shirley referred Ingram to Dr. Levy at Concord Orthopaedics for evaluation of possible disc injury in the lower lumbar spine area after noting some narrowing of the disc space and mild instability.  Dr. Levy examined Ingram on September 27, 1993, and recommended an MRI, anti-inflammatory medication, and continued physical therapy.  When he examined Ingram again on November 3, he found no change and decided to refer him to Dr. Nagel for evaluation.  The chiropractic and physical therapy notes for September and October show some progress.  In November, Ingram was discharged from physical therapy with home exercises.

Dr. Nagel saw Ingram on November 15 and again on November 29, 1993.  He first diagnosed mechanical low back pain and degenerative spine disease and recommended an MRI and medical treatment.  The MRI showed diffuse degenerative loss of signal of the lumbar discs from L2 to S1, marked narrowing between vertebrae in one area with possible mild bulging of the disc, and mild narrowing in another area.  At the second visit, Dr. Nagel found Ingram's range of motion decreased and a pain trigger point although his neurological exam remained normal.  He offered no further treatment other than to try a back brace for awhile.

In January 1994, Dr. Nagel noted that Ingram was totally stiff but without objective findings and diagnosed cervico-lumbar strain.  Dr. Nagel felt that Ingram had reached maximum medical improvement at that point.  He suggested vocational

rehabilitation. Dr. Nagel completed a Physician's Statement for the New Hampshire Department of Employment Security in March 1994 in which he stated that Ingram was justified by medical reasons in stopping work in June 1993 and that he would not be able to return to his former work. He gave his opinion that Ingram was limited in bending, lifting, carrying, reaching, walking, climbing stairs, standing, and sitting, but he did not give a degree of restriction. He suggested vocational rehabilitation.

Dr. Ashcliffe completed a questionnaire on July 1, 1994, in which he stated that Ingram was capable of full-time sedentary work. Two months later, Dr. Nagel completed a medical report for the Social Security Administration in which he described Ingram as having continued severe pain and decreased functional abilities. He assessed Ingram's ability to do work related activities as being limited to occasionally lift up to ten pounds, and to sit, stand and/or walk up to two to three hours per day. Dr. Nagel believed that Ingram should not climb, balance, stoop, crouch, or crawl, but that he could occasionally kneel. In November, Dr. Nagel placed Ingram on a total temporary disability status from October through December 1994.

Ingram's application for benefits was denied initially and on reconsideration. He requested a hearing which was held before an Administrative Law Judge ("ALJ") on November 16, 1994. Ingram was accompanied at the hearing by a non-attorney representative. Ingram testified that his back and neck pain were the major problems preventing him from working. He described the pain as

4

located in his neck with radiation down both sides, underneath his shoulder blades, and down to his tailbone. He said the pain was aggravated by standing too long and his sleep was interrupted twice a night by the pain. At the time of the hearing, Ingram said that he was taking eight Vicodin a day for pain. In response to the ALJ's questions, Ingram said that his daily activities were limited and that he could no longer participate in the recreational activities he enjoyed before his injury.

A vocational expert testified that Ingram was considered a younger worker with limited educational ability. The ALJ posed a hypothetical worker with Ingram's past work experiences and a light to sedentary work capacity with no prolonged standing, walking, or sitting, and with an option to sit or stand at will. The vocational expert responded that he could perform a supervisory position as a transferred skill from the supervisory role he had in his prior mechanic position. He identified that type of work as semi-skilled light work. The vocational expert also testified that Ingram could do light engine repair, or security monitor work. If he were restricted to only sedentary work, the vocational expert said he could work as a cashier or a sales counter clerk.

The ALJ denied Ingram's application for benefits on April 28, 1995, finding Ingram not disabled because jobs existed in the economy that Ingram could perform. In his decision, the ALJ found that Ingram had "severe degenerative disc disease of the spine with low back and cervical spine strain." He also found

5

that Ingram had a residual functional capacity for light and sedentary work limited by a requirement that he be allowed to change position as necessary. The ALJ found that Ingram could lift more than twenty pounds occasionally and ten pounds frequently and he could stand and walk no more than fifteen minutes at a time for a total of two hours in an eight hour work day. He further found that Ingram's sitting was restricted to two hours at a time, and he was precluded from doing any type of work that would require him to do overhead reaching or repetitive pushing and pulling. The ALJ concluded that Ingram could not return to his past work as a production machine mechanic or as a forklift operator. The ALJ found, however, that he was not disabled because a significant number of jobs existed that he could perform given his exertional capacity and limitations, age, education, and work experience: supervisor, small engine repair, security surveillance, cashier, sales counter clerk, assembly.

Ingram's appeal to the Appeals Council was denied. His motion to reverse and remand the decision followed.

### STANDARD OF REVIEW

After a final determination by the Commissioner and upon request by a party, the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g). The Commissioner's factual findings are conclusive if supported by substantial evidence. Id.; Irlanda-Ortiz v.

6

Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Rodriguez Pagan v. Secretary of Health & Human Servs., 819 F.2d 1, 3 (1st Cir.1987, cert. denied, 484 U.S. 1012 (1988).

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence, settle credibility issues, and draw inferences from the record evidence.  Ortiz, 955 F.2d at 769; Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984).  And, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings.  Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).  Accordingly, the Commissioner's decision to deny benefits will be affirmed unless it is based on a legal or factual error.  Manso-Pizarro v. Secretary of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996).

**DISCUSSION**

7

Ingram asserts that the ALJ's conclusion at the third and fifth steps of the sequential analysis[2] are not supported by substantial evidence in the record. More particularly, he asserts that his combination of impairments meets or equals a listed impairment. Ingram also contends that the ALJ did not sufficiently develop the administrative record at the hearing in light of the fact that he had a lay representative but not an attorney. He also contends that the record does not include substantial evidence to support the residual functional capacity for work that the ALJ used to find that he was not disabled, or his capacity to do the jobs which the ALJ determined he could perform. The issues raised are addressed as follows.

## A.    Requirements of a Listed Impairment

A claimant may prove a disability at the third step of the sequential analysis if he can show that his impairment meets or equals an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1, and has existed or is expected to continue for the

---

[2]    The ALJ is required to consider the following five steps when determining if a claimant is disabled:
    (1) whether the claimant is engaged in substantial gainful activity at the time of the claim;
    (2) whether the claimant has a severe impairment that has lasted for twelve months or had a severe impairment for a period of twelve months in the past;
    (3) whether the impairment meets or equals a listed impairment;
    (4) whether the impairment prevents or prevented the claimant from performing past relevant work;
    (5) whether the impairment prevents or prevented the claimant from doing any other work.
20 C.F.R. § 404.1520 (1995).

requisite twelve month period.  The ALJ found that Ingram's back condition did not meet or equal a listed impairment.  Ingram asserts, however, that the ALJ failed to consider all of the evidence and that his condition, properly evaluated in light of the evidence, equals a listed impairment.  Although the medical evidence in the record that Ingram points to on appeal tends to support the pain aspect of the first element of a listed spinal impairment, he has not established the second element: "[a]ppropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss."  20 C.F.R. pt. 404, subpt. P, App. 1 § 1.05(c)(2).  Accordingly, as Ingram has not shown that the ALJ erred in determining that his condition did not meet or equal a listed impairment, his appeal on that ground is denied.

**B.   Substantial Evidence in Record in Support of Finding**

At the fifth step of the sequential analysis, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, he retains the residual functional capacity to do work other than his prior work and that work the claimant can do exists in significant numbers in the national and regional economies.  20 C.F.R. § 404.1520(f); Keating v. Secretary of Health and Human Servs., 848 F.2d 271, 276 (1st Cir. 1988).

Ingram asserts that the record lacks substantial evidence to support the ALJ's finding that he retained a residual functional capacity to lift and carry up to twenty pounds occasionally and

ten pounds frequently and that he could sit for a period of up to two hours at a time. The ALJ did not indicate what record evidence he relied on in making his finding of residual functional capacity, although he stated that Ingram's treating doctors' evaluations were persuasive as to "specific limitations on his ability to perform some other work." In its motion for an order affirming the Commissioner's decision to deny benefits, the government points to evaluations in the record by two state agency physicians and a consultation report from an orthopedic surgeon as support for the ALJ's finding.

When a claimant has shown that he has an impairment that prevents him from doing his prior relevant work, and its effect on his ability to work is not readily apparent, a residual functional capacity evaluation by an expert is necessary to assess the claimant's ability to work. See Manso-Pizano, 76 F.3d at 17. An ALJ cannot rely on his or her own interpretation of the medical record to determine a claimant's ability to work "'unless the extent of functional loss, and its apparent effect on job performance, would be apparent even to a lay person.'" Id. quoting Santiago v. Secretary of Health and Human Servs., 944 F.2d 1, 7 (1st Cir. 1991). Ingram's impairment due to his back and neck condition was not sufficiently obvious to be assessed by a lay person.

The parties agree that the residual functional capacity found by the ALJ is for light work with some additional restrictions. The Commissioner states that the opinions of two

state agency doctors and a consultative orthopedic surgeon support the ALJ's finding that Ingram retained an exertional ability to perform light work with certain restrictions. The agency physician report cited was initially done in December 1993 by one doctor and was reviewed and affirmed in March 1994 by a second agency doctor. A report, such as the one in this record, by a nonexamining doctor that consists of merely checking boxes on a form to indicate functional capacity is entitled to little weight. <u>Berrios Lopez v. Secretary of Health and Human Servs.</u>, 951 F.2d 427, 431 (1st Cir. 1991).

The consultative orthopedic surgeon, Dr. Davison's, assessment of Ingram's functional capacity was based on an examination and is entitled to more weight than the opinion of a nonexamining doctor. 20 C.F.R. § 404.1527(d)(1). Dr. Davison concluded in July 1993 that Ingram could do light duty work, part time, without prolonged standing or walking. In contrast, Ingram's treating doctor, Dr. Nagel, assessed his functional capacity in August 1994 and, based on a last examination in July 1994, found that Ingram was limited to lifting and carrying only ten pounds and noted that the frequency of lifting and carrying was "negligible." Dr. Nagel's findings were consistent with an exertional level of sedentary work with additional restrictions.

A treating doctor's opinion is generally entitled to more weight than a consultation examiner's opinion and is given controlling weight unless it is not supported by accepted medical diagnostic evidence or is inconsistent with other substantial

11

evidence in the record. 20 C.F.R. § 404.1527(d)(2). The ALJ decided not to give Dr. Nagel's opinion controlling weight but did not identify the reasons for his determination. Although the Commissioner states in the motion for affirmance that Dr. Nagel's opinion was inconsistent with other opinions and objective medical evidence in the record, she points to no specific examples. The record presented on appeal does not seem to support the Commissioner's assertion. Accordingly, substantial evidence does not exist in the record to support the ALJ's finding that Ingram was capable of light work with certain restrictions.

The Commissioner contends, however, that based on the vocational expert's testimony, jobs exist in the relevant economies that Ingram can perform even if limited to the sedentary functional capacity assessed by Dr. Nagel. The ALJ posed an alternative hypothetical claimant limited to a work capacity to lift or carry no more than ten pounds with restrictions on reaching, bending and stooping, prolonged standing, walking or sitting, and with an option to change position at will, as assessed by Dr. Nagel. The vocational expert concluded that Ingram would be limited to unskilled positions at the sedentary exertional level. The vocational expert suggested jobs as a cashier, sales counter clerk, and assembler of small parts as in electronics or machinery. Ingram's representative challenged the vocational expert's suggestions because he believed bending, twisting, and prolonged

12

standing would be required of sales clerks and cashiers. The ALJ then asked whether the vocational expert had considered the activities mentioned and the vocational expert responded that he considered plumbing supply or hardware positions.

Ingram contends that the Dictionary of Occupational Titles' ("DOT") descriptions of jobs in each of the categories described by the vocational expert are beyond Ingram's exertional and skill limitations, so that substantial evidence does not exist to support the ALJ's reliance on those jobs. The Commissioner takes administrative notice of the accuracy of several sources of job information including the DOT. 20 C.F.R. 404.1566(d). An ALJ may rely on a vocational expert to provide an opinion about a claimant's abilities and the relevant job market on complex issues that cannot be resolved by manuals. See 20 C.F.R. § 404.1566(e). Some courts have determined that substantial evidence does not support an ALJ's determination based on testimony by a vocational expert that is clearly contradicted by the DOT. See, e.g., Smith v. Shalala, 46 F.3d 45, 47 (8th Cir. 1995) ("when expert testimony conflicts with the DOT, the DOT controls"); Williams v. Shalala, 997 F.2d 1494, 1500 (D.C. Cir. 1993) (VE's testimony in conflict with DOT does not constitute substantial evidence); but see Johnson v. Shalala, 60 F.3d 1428, 1425 (9th Cir. 1995) (ALJ may rely on testimony from expert that is different from DOT); Conn v. Secretary of Health and Human Servs., 51 F.3d 607, 610 (6th Cir. 1995) (same).

13

In this case, the vocational expert did not reveal the sources for his opinion regarding jobs which Ingram could perform and there is no indication that he relied on DOT listings. The DOT job classifications offered by Ingram to show that cashier, sales counter clerk, and assembly positions all require greater exertional and skill levels than his abilities do not give the whole picture. The vocational expert limited his opinion to assembly of small parts in electronics or machinery and to cashier or sales clerk positions in hardware or plumbing supply. It seems that no DOT listings for cashiers or sales clerk positions in hardware or plumbing supply meet Ingram's exertional and skill[3] limitations. See, e.g., DOT #279.357-050 (Salesperson, general hardware: light exertional level, medium educational level, more than three months of specific vocational preparation). The DOT lists assembly job categories at the sedentary exertional level that require less than a month of preparation and a low general educational development. See, e.g., DOT ## 726.684-110 (touch-up screener), 726.687-030 (loader semiconductor dies), 726.685-066 (bonder, semiconductor), 726.687-046 (wafer breaker, semiconductors), 725.687-022 (getterer lighting fixtures industry). However, it is unclear

_____

[3] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. . . . For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. § 404.1568(a).

14

whether the DOT listed assembly jobs would accommodate the sit or stand option the ALJ required or the limitation on reaching and repetitive pushing and pulling, as all of the assembly jobs require at least occasional reaching and pushing and pulling. In addition, it is not clear that the numbers of available jobs suggested by the vocational expert are available in the specific categories described in the DOT.

The generality and uncertainty of the vocational expert's testimony coupled with conflicting information from the DOT undermines the usefulness of his opinion on appellate review. On balance, the opinion does not provide substantial evidence establishing jobs Ingram could do given his residual functional capacity. Accordingly, as substantial evidence is lacking to support the ALJ's determination that jobs exist in significant numbers in the relevant economies which Ingram could perform, his determination at the fifth step that Ingram was not disabled is reversed. The matter is remanded to the Commissioner for further proceedings.

     SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

January 27, 1997

cc:  Raymond J. Kelly, Esq.
     David L. Broderick, Esq.