**Floyd ARMSTRONG, Plaintiff,**

v.

**Jo Anne BARNHART, Commissioner of Social Security, Defendant.**

No. 02 C 7572.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 15, 2003.

Timothy R. White, Chicago, IL, for Plaintiff.

Kathryn A. Beverly, Chicago, IL, for Defendant.

## MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Plaintiff Floyd Armstrong brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying him Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.

## I. BACKGROUND

The plaintiff filed an application for DIB and SSI on December 13, 2000, alleging he was disabled since October 6, 1995, as a result of asthma and arthritis. (Administrative Record ("R.") at 60–62, 156–157). His application was denied at the initial levels of administrative review (R. 131–134, 32–35), and he requested an administrative hearing. (R. 36). On May 2, 2002, an administrative law judge ("ALJ") conducted a hearing at which the plaintiff appeared, represented by counsel, and testified. (R.168–221). Thomas Dunleavy also appeared at the hearing and testified as a vocational expert. ("VE"). (R. 216–221). After considering all the evidence of record, in a decision dated May 30, 2002, the ALJ found that plaintiff was not disabled because he retained the capacity to do light work, and could perform a significant number of jobs in the national economy. (R. 18–24). This became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review of the decision on August 30, 2002. (R. 10–11).

### A. Evidence of Record

The plaintiff was fifty-one years old at the time of the ALJ's decision in this case, and fifty years old when his insured status expired on June 30, 2001. (R. 19). He testified that he completed the eleventh grade. (R. 175–176). The plaintiff worked as a welder from 1974 until 1995. (R. 66). According to the VE, this was medium, unskilled work, as plaintiff described it. (R. 217). This job ended when the company was sold and, thereafter, went out of business. (R. 190).

On July 26, 1999, plaintiff went to the Cook County Hospital emergency room, complaining of left hip pain. (R. 121). The physician's notes are mostly illegible, but it would appear plaintiff did not have a limp. (R. 121). X-rays revealed some

mild sclerosis that could have represented early degenerative joint disease. (R. 123). He was diagnosed with degenerative joint disease, and given prescriptions for Extra Strength Tylenol and Ibuprofen. (R. 122).

Plaintiff returned to the emergency room with complaints of left hip pain on September 20, 1999. (R. 119). He also complained of occasional right hip pain and mild back pain. (R. 122). He said he had the left hip pain for two years, and the mild back pain for five or six years. (R. 122). Upon examination, there was no spine tenderness and full range of motion. (R. 119). Reflexes were normal. (R. 119). There was, however, a patch of decreased sensation in the left leg. (R. 119). The diagnosis was osteoarthritis of the left hip, and plaintiff was given a prescription for Naprosyn. (R. 120).

Dr. Shital Shah performed a consultative examination on plaintiff at the request of the state disability agency on January 11, 2001. (R. 124–127). Plaintiff claimed he had suffered low back and left hip pain since 1984. (R. 124). He claimed to use a cane, but was not using it that day. (R. 124). He also claimed to have experienced left wrist pain for seven years. (R. 124). Plaintiff also stated he had a history of asthma. (R. 125). Plaintiff was limping on the left side. (R. 126). Examination of the left wrist revealed full range of motion, normal muscle and grip strength, and no tenderness. (R. 126). Range of motion of the lower back was normal at 90 degrees flexion, and 30 degrees extension. (R. 126). Plaintiff complained of left hip pain when squatting. (R. 126). Left hip range of motion was limited at 50 degrees flexion, and 10 degrees abduction, internal and external rotations. (R. 126). Muscle strength was slightly decreased in the left leg. (R. 126). Sensation was normal, as were deep tendon reflexes. (R. 126). An x-ray of the left hip was negative; osseous and joint structures were normal, joint spaces were well-maintained, and there was no evidence of major joint pathology. (R. 129).

On February 16, 2001, a state agency physician reviewed plaintiff's medical records. (R. 130–137). The doctor felt plaintiff could essentially perform medium work[1]. with the additional limitations of being able to stoop only occasionally, and not being able to work around fumes, dusts, or poor ventilation. (R. 131–134). Plaintiff underwent x-rays of his lumbar spine and left hip on February 4, 2002. (R. 155). The left hip study was normal, while the lumbar spine x-ray revealed evidence of severe degenerative disc disease at L4–5 and L5–S1, with marked narrowing of the disc spaces and marginal spurs. (R. 155).

At the administrative hearing, plaintiff testified that he suffered from pain in his back, left hip and left wrist. He stated that he used a cane to walk, but had not brought it to the hearing. (R. 176–177). He estimated he could walk just thirty feet without his cane, and perhaps a block with it, before having to stop. (R. 204–205). He thought he could sit for thirty minutes before he had to get up. (R. 205). Plaintiff said he could probably lift fifteen pounds. (R. 206). Plaintiff has attempted to worked twice since his welding job ended. He had a job as a garbage sorter in 1997, but was "off ill too much" (R. 82, 157). He worked as a janitor at a nursing home in 2000, but could not tolerate being on his feet that much. (R. 186). Plaintiff testified that while he sometimes cooked, his friend usually did the cooking. (R. 191). He stated that he was "not really" able to do any household chores like vacuuming, mopping, sweeping, or taking out

1. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. §§ 404.1567(c); 416.967(c).

garbage. (R. 192). His friend's grandson "volunteered" to perform these tasks. (R. 192). Plaintiff said he did not grocery shop because the cold air from the freezers bothered his leg. (R. 194). According to plaintiff, he does not sleep well due to his leg bothering him. (R. 195). Plaintiff testified that he takes medication for his blood pressure and uses an inhaler for his asthma. (R. 197–198). He takes aspirin for his back and hip pain. (R. 203).

The VE testified that plaintiff's work as a welder was medium work. (R. 217). The ALJ asked the VE to consider a worker with an eleventh-grade education; with the capacity to lift twenty pounds occasionally and ten pounds frequently; sit and walk consistent with light work; occasionally climb stairs, stoop, crouch, or kneel; with the inability to climb ladders, work around heights, crawl, or work around respiratory irritants. (R. 219). The VE felt that such an individual could not perform plaintiff's past work as a welder, but could perform other jobs existing in significant numbers in the region. (R. 219). Specifically, the VE cited small parts assembler (15,000 jobs), inspector/packager (10,000 jobs); and unskilled cashier (15,000 jobs). (R. 219).

### B. *ALJ's Decision*

After considering all the evidence of record, the ALJ determined that the plaintiff did not have an impairment, or combination of impairments, that met or equaled an impairment listed as disabling in the Commissioner's regulations. (R. 23). The ALJ also found that the plaintiff's subjective complaints were not totally credible. (R. 23). According to the ALJ, the plaintiff retained the capacity to perform less than a full range of light work. (R. 23).

Under the Commissioner's regulations, light work:

> involves occasionally lifting no more than twenty pounds with frequent lifting or carrying of objects weighing up to ten pounds, or it may involve infrequent lifting but require substantial walking or standing or sitting with the pushing or pulling of arm or leg controls.

20 C.F.R. §§ 404.1567(b); 416.967(b). The ALJ found the plaintiff was limited in his ability to climb, work around heights, work around respiratory irritants, and crawl. (R. 23). Considering the plaintiff's vocational factors—age, education, and transferable skills—the ALJ noted that, without the additional limitations, the Medical–Vocational Guidelines would provide a framework for determining that plaintiff was not disabled.[2] (R. 23). Relying on the VE's testimony, the ALJ noted that, even with the additional limitations, there were a significant number of jobs in the economy which plaintiff could perform. (R. 23). As a result, the ALJ found plaintiff not disabled under the Act. (R. 23). This stands as the Commissioner's decision and is presently before this court for review. 42 U.S.C. § 405(g).

### II. ANALYSIS

The applicable standard of review of the Commissioner's decision is a familiar one. The Social Security Regulations provide a five-step inquiry to determine whether a plaintiff is disabled:

1) whether the plaintiff is currently employed;

2) whether the plaintiff has a severe impairment;

3) whether the plaintiff has an impairment that meets or equals one of the

---

**2.** The ALJ applied Rule 202.13, which assumes an individual with a high school education. To the extent that this was an error, it was harmless as Rule 202.10, which as-sumes less than a high-school education, also directs a conclusion of "not disabled." In addition, the ALJ's questioning of the VE assumed an eleventh-grade education.

impairments listed as disabling in the Commissioner's regulations;

4) whether the plaintiff can perform his past relevant work; and

5) whether the plaintiff is capable of performing work in the national economy.

20 C.F.R. §§ 404.1520; 416.920; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir.1995). The burden of proof is the plaintiff's through step four; if it is met, the burden shifts to the Commissioner at step five. *Id.* In this case, the ALJ determined, at step five, that plaintiff was capable of performing jobs that exist in significant numbers in the regional economy. The plaintiff argues that the ALJ's decision is not supported by substantial evidence because he failed to fully develop the record and "played doctor" in his assessment of the medical evidence.

The court must affirm this decision if it is supported by substantial evidence. 42 U.S.C. § 1382(c)(3). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir.1997), *citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The court may not reweigh the evidence, or substitute its judgment for that of the Social Security Administration. *Binion*, 108 F.3d at 782. Where conflicting evidence would allow reasonable minds to differ as to whether the plaintiff is disabled, the Commissioner has the responsibility for resolving those conflicts. *Id.* Conclusions of law are not entitled to such deference, however, so where the Commissioner commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Id.*

The plaintiff argues that the ALJ failed to fully and fairly develop the record in this case. According to the plaintiff, be-

cause no medical expert ever reviewed the x-rays of February, 2002, the ALJ improperly "rendered a layperson's opinion that severe arthritis of the lower back would not reasonably be expected to cause pain such as to preclude the prolonged standing of light work." (*Plaintiff's Memorandum in Support of His Motion*, at 8). More specifically, the ALJ addressed the x-ray as follows:

> The established residual functional capacity for no more than light work is also consistent with the finding of severe degenerative disc disease at L4/L5 and L5/S1 with marked narrowing of corresponding disc spaces and marginal spurs, revealed in the x-ray taken February 4, 2002 since there is no objective evidence of any upper extremity limitation and the normal neurological findings contained in the consultative examination[sic]. Additionally, the finding at[sic] the claimant is not is supported by the conclusions reached by the physicians employed by the State Disability Determination Services, although the undersigned established a more restrictive residual functional capacity because of the claimant's postural limitations.

(R. 21). According to the plaintiff, when the ALJ found his residual functional capacity to be more limited than that found by the physician from the State Disability Determination Services, the ALJ was impermissibly "playing doctor."

Plaintiffs in disability cases periodically accuse the ALJs of "playing doctor" and, indeed, the Seventh Circuit has long cautioned ALJs against succumbing to the temptation to play doctor and render their own medical opinions. *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.1990). But the accusation may be tossed about a bit too casually. The Seventh Circuit has noted that "cases in which [they] have reversed because an ALJ impermissibly

'played doctor' are ones in which the ALJ failed to address relevant evidence." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir.2001). Here, the plaintiff cannot make such an argument, as the ALJ addressed all the evidence available, including not only the x-rays, but medical opinion and objective clinical findings as well. Certainly, plaintiff does not mean to suggest that an ALJ must always take his or her resid-

ual functional capacity assessment directly from the mouth of a physician; under the regulations, it is the ALJ's responsibility to determine a residual functional capacity and resort to a medical expert is not always necessary. 20 C.F.R. § 404.1527(f)(2).[3]

■ Our review of the record indicates that the ALJ was not "playing doctor," but

---

3. The regulations treat the use of medical expert opinion as follows:

(f) Opinions of nonexamining sources. We consider all evidence from nonexamining sources to be opinion evidence. When we consider the opinions of nonexamining sources, we apply the rules in paragraphs (a) through (e) of this section. In addition, the following rules apply to State agency medical and psychological consultants, other program physicians and psychologists, and medical experts we consult in connection with administrative law judge hearings and Appeals Council review:

(1) At the initial and reconsideration steps in the administrative review process, except in disability hearings, State agency medical and psychological consultants are members of the teams that make the determinations of disability. A State agency medical or psychological consultant will consider the evidence in your case record and make findings of fact about the medical issues, including, but not limited to, the existence and severity of your impairment(s), the existence and severity of your symptoms, whether your impairment(s) meets or equals the requirements for any impairment listed in Appendix 1 to this subpart, and your residual functional capacity. These administrative findings of fact are based on the evidence in your case record but are not themselves evidence at these steps.

(2) Administrative law judges are responsible for reviewing the evidence and making findings of fact and conclusions of law. They will consider opinions of State agency medical or psychological consultants, other program physicians and psychologists, and medical experts as follows:

(i) Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. However, State agency medical and psycho-

logical consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled. See § 404.1512(b)(6).

(ii) When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician or psychologist, the administrative law judge will evaluate the findings using relevant factors in paragraphs (a) through (e) of this section, such as the physician's or psychologist's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions. Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

(iii) Administrative law judges may also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart. When administrative law judges consider these opinions, they will evaluate them using the rules in paragraphs (a) through (e) of this section.

performing his duty to consider and weigh the evidence. In 1999, lumbar x-rays revealed only mild sclerosis. Clinical findings at that time were essentially normal—no tenderness, full range of motion, normal reflexes—aside from a patch of decreased sensation in the left leg. The consultative examination the agency arranged yielded similar results. Examination of plaintiff's wrist and back was again, essentially normal. There was limited range of motion in plaintiff's left hip, but strength was only slightly decreased and an x-ray was normal. The state agency physician then rendered a medical expert opinion, based on this evidence, as to plaintiff's residual functional capacity and found he could performed a somewhat limited range of medium work.

Rather than simply rely on this opinion, based on nearly the entire medical record save for one piece of evidence, the ALJ added the most recent x-rays to the analysis. The x-rays the ALJ considered confirmed the existence of a severe lower back impairment, but failed to establish the existence of a hip impairment. The ALJ did not ignore the x-rays but employed them to find plaintiff's residual functional capacity to be more limited than the state agency physician had determined. In so doing, the ALJ also considered the fact that plaintiff's clinical signs had been mostly normal. That means the ALJ did not determine that an x-ray of the type at issue translated to a capacity for light work, but that it confirmed the existence of a severe impairment which resulted in the limitations suggested in plaintiff's physical examinations.

Typical cases of ALJs impermissibly "playing doctor" are when they either reject a doctor's medical conclusion without other evidence, see Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir.2001), or when they draw medical conclusions themselves about a claimant without relying on medical evidence, see, e.g., Green v. Apfel, 204 F.3d 780, 782 (7th Cir.2000). The ALJ did neither here, but considered the evidence of record as a whole. It could be argued that he "rejected" the state agency physician's medical opinion when he "adjusted" it, but it cannot be claimed he did so without other evidence. Certainly, it cannot be argued that the ALJ drew a medical conclusion without relying on any medical evidence for support.

Arguing to the contrary, plaintiff relies on a case from the First Circuit, which is readily distinguishable. In Manso–Pizarro v. Sec. of Health & Human Services, 76 F.3d 15 (1st Cir.1996), unlike the instant case, the record contained no analysis of functional capacity by a physician. 76 F.3d at 17. And, quite the contrary to the single x-ray at issue here, the ALJ in Manso–Pizarro interpreted a large volume of medical records regarding the plaintiff's cardiac condition, including seven ECGs indicating sinus tachycardia, two chest x-rays showing an enlarged heart, five physician's reports suggesting only a fair prognosis, and laboratory and chemical profiles. 76 F.3d at 18. The ALJ in that case felt the plaintiff could perform medium work. 76 F.3d at 17. What the court held was that these records did not "unambiguously indicate the existence of medical conditions and symptomatology that do not appear", at least without further evaluation by an expert, to be so mild as to make it obvious to a layperson that the claimant's ability to perform [medium work] was unaffected. 76 F.3d at 18–19. Such a holding is inapplicable here, where the ALJ interpreted a single x-ray against the balance of a medical record which consisted of essentially normal clinical signs and the opinion of a physician that the plaintiff could perform medium work. In so doing, the ALJ arrived at a conclusion that is supported by substantial evidence and, accordingly, we must affirm his decision.

### III. *CONCLUSION*

For the foregoing reasons, the defendant's motion for summary judgment is GRANTED, and the plaintiff's motion for summary judgment is DENIED.