[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10007
Non-Argument Calendar
_____

D.C. Docket No. 5:11-cv-03556-VEH


JAMES EARL CASTLE, SR.,

Plaintiff-Appellee,

versus

CAROLYN W. COLVIN,
ACTING COMMISSIONER
OF SOCIAL SECURITY

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(February 18, 2014)

Before TJOFLAT, PRYOR, and JORDAN, Circuit Judges.

PER CURIAM:

The Commissioner of Social Security appeals the district court's order

reversing the Social Security Administration's denial of disability insurance

benefits to James E. Castle and remanding the case to the Administrative Law Judge with instructions to obtain a consultative examination. We conclude that the district court erred in ruling that substantial evidence did not support the ALJ's residual functional capacity ("RFC") finding and in ordering a consultative examination.[1]  Accordingly, we reverse and remand.

## I

On October 26, 2009, Mr. Castle filed an application for a period of disability and disability insurance benefits pursuant to Titles II and XVIII of the Social Security Act, 42 U.S.C. §§ 401-433, 1395-1395kkk.  Mr. Castle alleged a disability onset date of January 1, 2008, and was last insured through March 31, 2009.  The medical evidence submitted by Mr. Castle in support of his claim revealed that he had a knee arthroscopy in October of 1998.  Dr. Troy Layton, the doctor who performed the surgery, ultimately released Mr. Castle back to work without restrictions in April of 2000.  Following Dr. Layton's release, Mr. Castle did not visit any physician regarding knee trouble or knee pain between 2001 and 2009.

In 2007, Mr. Castle saw a primary care physician for a cough, earache, sinus pressure, and a sore throat.  The doctor's notes indicated that Mr. Castle had a

---

[1] Mr. Castle contends that we do not have jurisdiction, but he is mistaken.  The district court entered an order reversing the decision of the ALJ and remanding the matter pursuant to sentence four of 42 U.S.C. § 405(g).  As such, the district court's order is final and appealable, and we have jurisdiction over this appeal. *See Newsome v. Shalala*, 8 F.3d 775, 778 (11th Cir. 1993) ("If the district court enters a "sentence four" remand order, that judgment is appealable.").

history of lumbar disc disease that had improved and a normal gait and station.  At this 2007 visit, Mr. Castle denied any significant musculoskeletal symptoms.  Mr. Castle visited the same doctor again in May of 2008 for a cough and ear infection.  At this visit, the doctor noted that Mr. Castle's lumbar condition was stable, Mr. Castle again denied musculoskeletal symptoms, and the doctor observed that Mr. Castle had a normal gait and station.

In was only in June of 2009—three months after his date last insured and nine years after his knee arthroscopy—that Mr. Castle visited a chiropractor for knee pain.  Several visits with doctors ensued, and in February of 2010 Mr. Castle had a knee arthroplasty.  In March of 2011—two years after Mr. Castle's date last insured—Dr. Saadat Ansari, a doctor whom Mr. Castle had frequently visited since October of 2009, completed a physical RFC assessment. Dr. Ansari opined that Mr. Castle's pain frequently interfered with his attention and concentration and that even working a low stress job would be problematic.  Dr. Ansari noted, however, that his assessment was primarily based on subjective findings.

Mr. Castle's application for disability and disability insurance benefits was ultimately denied on December 21, 2009, and he subsequently requested a hearing before an ALJ.  The ALJ conducted a hearing on April 19, 2011.  The ALJ found that Mr. Castle had not established that he was disabled by his date last insured—March 31, 2009—and that the records after that date were immaterial. The ALJ did

3

find that Mr. Castle had severe impairments of obesity and knee arthritis. But because neither impairment nor combination of impairments met or equaled a listed impairment, the ALJ had to make a determination of Mr. Castle's RFC. The ALJ determined that Mr. Castle's RFC was less than the full range of medium work, and that Mr. Castle could (1) frequently lift 25 pounds; (2) occasionally lift 50 pounds; (3) stand, walk, and sit for 6 hours; (4) frequently push and pull with his lower extremities, as well as balance, stoop, and crouch; and (5) occasionally climb, kneel, and crawl.

The ALJ noted that Mr. Castle's impairments reasonably could be expected to cause the alleged symptoms, but that Mr. Castle's statements concerning the intensity, persistence, and limited effects were not credible to the extent they were inconsistent with the RFC. The ALJ cited to a function report completed in November of 2009, where Mr. Castle himself noted that he shopped, prepared meals, drove, mowed his lawn, attended church, walked, and did laundry. The ALJ further noted that Mr. Castle also failed to seek medical treatment for his knee from the alleged onset date through the date last insured, which suggested that his knee problems were not severely limiting during that time. The ALJ determined that the limitations Mr. Castle listed in the November 2009 function report were inconsistent with the activities of daily living that Mr. Castle reported in the same

4

function report and were inconsistent with the lack of medical treatment prior to the date last insured.

The ALJ also afforded little weight to Dr. Ansari's opinions from March 2011, as they were based on subjective findings and information obtained after the March 2009 date last insured. The ALJ noted that Mr. Castle had not sought medical treatment for his knees between 2001 and October of 2009, denied significant musculoskeletal symptoms in 2007 and 2008, had a normal gait and station in 2007 and 2008, and participated in significant activities of daily living. The ALJ determined that, although Mr. Castle could not perform his past relevant work, there were other existing jobs that he could perform. Thus, the ALJ found that he was not disabled.  Mr. Castle appealed the ALJ' s determination, but the Appeals Council denied his appeal.

In October 2011, Mr. Castle filed a complaint in the district court. The district court determined that the ALJ did not err in affording little weight to Dr. Ansari' s RFC assessment, as it was completed two years after the date last insured. The district court also ruled, however, that the ALJ's RFC finding was not supported by substantial evidence.  The court found that the ALJ discounted the only physician assessment regarding Mr. Castle's ability to work, so the record did not contain any medical opinion regarding his ability to work with his physical limitations.  The court noted that the ALJ was not a trained medical professional,

and found that the ALJ "play[ed] doctor" by interpreting the lack of medical data. The court noted that the ALJ had a duty to develop a full and fair record and ruled that it was error for the ALJ to fail to order a consultative examination when one was necessary to make an informed decision. The court remanded the case with instructions for the ALJ to order a consultative examination of Mr. Castle.  This appeal by the Commissioner timely followed.

## II

We review "de novo the district court's decision on whether substantial evidence supports the ALJ's decision." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Thus, "the question is not whether substantial evidence supports a finding made by the district court but whether substantial evidence supports a finding made by the [ALJ]." *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986). Substantial evidence is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec. Admin.,* 363 F.3d 1155, 1158 (11th Cir. 2004) (internal quotation marks omitted). Even if we find that the evidence preponderates against the ALJ's decision, we must affirm the ALJ's decision if the decision is supported by substantial evidence. *See id.* at 1158-59. S*ee also Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

## III

6

The district court erred in concluding that the ALJ's RFC finding was not supported by substantial evidence. On the contrary, the record was fully and fairly developed, and a consultative examination was unnecessary.

Pursuant to 20 C.F.R. § 404.1520, an ALJ must follow a five-step, sequential evaluation process for determining disability.  During the first three steps, the claimant bears the burden of proving that (1) he "has not engaged in substantial gainful activity," (2) he "has a severe impairment or combination of impairments, and (3) his "impairment or combination of impairments meets or equals a listed impairment." *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). If the claimant "cannot prevail at the third step, [he] must proceed to the fourth step where [he] must prove that [he] is unable to perform [his] past relevant work." *Id.*

At this fourth step, the ALJ must make an assessment of the claimant's RFC. *See Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The claimant is responsible for providing medical evidence demonstrating an impairment and how severe the impairment is during the relevant time period. *See* 20 C.F.R. § 404.1512(c). A claimant who is seeking to establish a disability based on subjective testimony of pain and other symptoms

"must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). *See also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If a claimant satisfies step four, the burden at step five shifts to the Commissioner to demonstrate there is other work available in the national economy that the claimant can perform. *See Jones*, 190 F.3d at 1228. If the Commissioner demonstrates that jobs are available, the claimant must show that he is unable to perform those jobs in order to be found disabled. *Id.*

Here, the ALJ's RFC finding is sufficiently supported by the record. During the relevant time period between January of 2008 and March of 2009, Mr. Castle did not once visit a physician for his alleged knee pain. When Mr. Castle did visit his primary care physician during the relevant time period, he denied musculoskeletal problems and the doctor noted that he had a normal gait and station. Moreover, Mr. Castle testified at his hearing before the ALJ that he did not seek treatment for his knees until several months after his date last insured. Mr. Castle also admitted, in the function report he completed in November of 2009, that he regularly prepared meals taking up to one and a half hours, mowed the yard for up to four hours, did the laundry, attended church, cared for doves,

grocery shopped, and went out to eat.  Finally, Dr. Troy Layton, who operated on Mr. Castle's knee in 1998, released Mr. Castle with no work restrictions as of April of 2000.  We conclude that such evidence was sufficient to support the ALJ's RFC finding.

With regards to Mr. Castle's subjective testimony of pain and other symptoms, it is true that Mr. Castle may have suffered from knee problems and obesity, but the record is devoid of any objective medical evidence confirming the severity of the alleged pain. The ALJ noted that although it was possible that Mr. Castle's alleged pain could reasonably be expected to arise from his impairments, Mr. Castle's statements concerning the intensity, persistence, and limited effects were not credible to the extent they were inconsistent with the RFC assessment. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) ("The ALJ discredited [claimant's subjective complaints of pain] by explaining that this pain had not require[d] routine or consistent treatment, and [the claimant] often went for months or years between complaining of this pain to his physicians.").

## IV

Because we conclude that the record was fully and fairly developed, a consultative examination was not necessary for the ALJ to make an informed decision. "[A] hearing before an ALJ is not an adversary proceeding," and "the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129

9

F.3d 1420, 1422 (11th Cir. 1997). At this hearing, the burden was on Mr. Castle to prove that he was disabled before his date last insured and, therefore, entitled to receive Social Security benefits. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. § 404.1512. The ALJ "has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). In this case, the record contains sufficient evidence supporting the ALJ's RFC finding: (1) Mr. Castle's lack of treatment for his knee problems; (2) his denial of musculoskeletal issues; (3) his weekly regiment; (4) and Dr. Layton's release without work restrictions.

Contrary to the district court's reasoning, the ALJ did not "play doctor" in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC. *See* 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."). Indeed, the pertinent regulations state that the ALJ has the responsibility for determining a claimant's RFC. 20 C.F.R. § 404.1546(c). An ALJ must give a treating physician's opinion substantial weight, unless good cause is shown. *See Phillips v. Barnhardt*, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the "(1) treating physician's opinion was not

bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1241.    The district court correctly noted that the ALJ should have afforded Dr. Ansari's 2011 opinion less weight. First, Dr. Ansari completed his assessment two years after Mr. Castle's date last insured. Second, other evidence in the record supports a contrary finding: the lack of medical treatment during the relevant time period; Mr. Castle's own testimony; his self-reported activities; and Dr. Layton's opinion following Mr. Castle's knee arthroscopy.

In ordering a consultative examination, the district court relied on *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996), and ruled that an ALJ is not qualified to interpret raw data in a medical record. That reliance, in our view, was misplaced. In *Manso-Pizarro*, the claimant's medical record, involving a serious heart condition and multiple stays at the hospital, was far more complicated than Mr. Castle's. *See id.* at 18 ("During the claimant's 12-day hospital stay, seven electrocardiograms combined conclusively to show sinus tachycardia. Two chest x-rays revealed an enlarged heart. No fewer than five physicians were asked to consult."). Furthermore, medical tests revealed "ventricular tachycardia [ ], frequent PVCs, premature arterial contractions, and some evidence of paroxysmal atrial [ ]." *Id.* The First Circuit found that "those reports otherwise unambiguously indicate the existence of medical conditions and

11

symptomatology that do not appear, at least without further evaluation by an expert, to be so mild as to make it obvious to a layperson that the claimant's ability to perform her particular past work as a cook's helper was unaffected." *Id.* at 18-19

Mr. Castle's case is unlike the claimant's case in *Manso-Pizarro* and falls within the exception articulated by the First Circuit. *See id.* at 17 ("[W]here the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment."). Mr. Castle's lack of medical treatment for his knees during the relevant period does not demand review by a medical professional.

## V

The ALJ appropriately considered all of the evidence Mr. Castle proffered in support of his claim of disability. The district court erred in concluding that substantial evidence did not support the ALJ's RFC finding, that the ALJ's findings should have been underpinned by a medical source opinion, and that the ALJ was not qualified to interpret Mr. Castle's straightforward medical record. Because the ALJ's RFC finding is supported by substantial evidence and the ALJ properly carried out his regulatory role, we reverse and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**