An appropriate Order accompanies this Memorandum Opinion.

**Linda ROESCHLAUB, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

Civil Action No. 2013–12203–RBC.[1]

United States District Court, D. Massachusetts.

Signed June 26, 2014.

---

1. On October 5, 2013, the parties consented to the jurisdiction of a Magistrate Judge for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c). (# 10).

Tamara N. Gallagher, Francis M. Jackson, Jackson & MacNichol, South Portland, ME, for Plaintiff.

Thomas D. Ramsey, Office of the General Counsel, Social Security Administration, Boston, MA, for Interested Party.

Christine J. Wichers, United States Attorney's Office MA, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER ON MOTION TO REVERSE (# 17) AND DEFENDANT'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION (# 19)

COLLINGS, United States Magistrate Judge.

### I. Introduction

On September 5, 2013, plaintiff Linda Roeschlaub ("Roeschlaub") filed a complaint (# 1) pursuant to 42 U.S.C. § 405(g) against the Commissioner of Social Security ("the Commissioner"), appealing the denial of her claim for Social Security Disability Income ("SSDI") and Supplemental Security Income ("SSI") benefits. On December 13, 2013, the Commissioner filed an answer to the complaint (# 14); the administrative record was submitted on or about December 17, 2013.

On January 22, 2014, the plaintiff filed a motion to reverse (# 17) which incorporated a memorandum of law and two exhibits. Thereafter on March 4, 2014, the defendant submitted a motion to affirm the Commissioner's decision (# 19) together with a memorandum of law (# 20) and two exhibits. Roeschlaub filed a response (# 21) on March 18, 2014 and, with leave having been granted, the defendant filed a sur-reply (# 24) on March 20, 2014. With the record complete, the cross-motions stand ready for decision.

## II. Procedural Background

Roeschlaub originally filed for Social Security disability insurance benefits on January 21, 2009, alleging a disability onset date of December 31, 2005. (TR[2] at 7[3]) Her application was denied both initially on May 20, 2009 (TR at 68–70) and on reconsideration on November 17, 2009. (TR at 77–79) Roeschlaub requested a hearing before an administrative law judge ("ALJ"). (TR at 84) That hearing was held on November 1, 2010, with the plaintiff, her attorney and a vocational expert in attendance. (TR at 20–63).

On November 16, 2010, the ALJ issued a decision wherein she found that Roeschlaub had not been under a disability from December 31, 2005. (TR at 4–14) With the Disability Review Board having failed to complete its review within ninety days of the ALJ's decision, that decision became to final decision of the Commissioner. (TR at 1–3) Roeschlaub appealed the denial of her SSDI and SSI benefits claims to the United States District Court for the District of Massachusetts pursuant to 42 U.S.C. § 405(g).

On December 5, 2011, the undersigned issued a Report and Recommendation, subsequently adopted by the District Judge to whom the case was then assigned, recommending that the case be remanded to the Commissioner because the ALJ had erred in her handling of the treating physician's opinion evidence. *Roeschlaub v. Astrue*, 2011 WL 7477033 (D.Mass., Dec. 5, 2011), *adopted by* 2012 WL 787388 (D.Mass., Mar. 8, 2012). Specifically, I wrote:

In short, having stated that she 'concurs with Dr. Johnson's opinion and gives it great weight, as it is consistent with the record as a whole,' to the extent that the ALJ rejected the doctor's sit/stand limitation, she erred in failing to explain that rejection. Alternatively, to the extent that the ALJ accepted Dr. Johnson's opinion in its totality, her failure to investigate further in order to obtain an 'explanation of the precise limitation' (TR at 674) about which the doctor opined relative to the sit/stand limitation was error. Further, the ALJ erred in failing to incorporate the less than two-hour sit/stand limitation is her RFC and to pose hypothetical questions to the vocational expert incorporating that limitation.

*Roeschlaub*, 2011 WL 7477033, at *5 (footnote omitted)[4].

The matter was remanded to the Commissioner. (TR at 771) On July 20, 2011, Roeschlaub "filed a new subsequent claim for a period of disability and disability insurance benefits." (TR at 775) Thereafter on April 18, 2012, Appeals Council consolidated the remanded claim and the new claim, and then remanded the case back to the ALJ "for further proceedings consistent with the order of the court" and to issue a new opinion on the consolidated claims. (TR at 775).

A supplemental hearing attended by the plaintiff, her attorney and an impartial vocational expert was held before the ALJ on April 16, 2013. (TR at 998–1025) Within a month, on May 10, 2013, the ALJ issued her decision denying Roeschlaub's claims. In her decision, the ALJ made the follow-

---

**2.** The abbreviation "TR" refers to the administrative record.

**3.** The original administrative record or "previous file" is designated in the current administrative record as 1F–722.

**4.** I also concluded that Roeschlaub's challenge to the ALJ's credibility analysis was without merit. *Roeschlaub*, 2011 WL 7477033, at *6–7.

ing findings of fact and conclusions of law: 1) The claimant meets the insured status requirements of the Social Security. Act through December 31, 2010 (TR at 738); 2) The claimant has not engaged in substantial gainful activity since December 31, 2005 (TR at 738); 3) The claimant has the following severe impairments: degenerative disc disease of the lumbar and cervical spine, and right shoulder bursitis (TR at 738); 4) The claimant does not have an impairment or combination of impairments .that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1546, 404.1526, 416.920(d), 416.925 and 416.926) (TR at 739); 5) The claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except she could not push or pull greater than fifteen pounds with her bilateral upper extremities. The claimant would require the opportunity to alternate between sitting and standing at, will over the course of an eight-hour workday. The claimant would be limited to simple, 1–2 step tasks (TR at 739); 6) The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965) (TR at 745); 7) The claimant was born on May 4, 1971 and was 34 years old, .which is defined as a younger individual age 18–44, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963) (TR at 745); 8) The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964) (TR at 745); 9) Transferability of job skills is not material to the determination of disability because using the Medical–Vocational Rules as a framework supports a finding that the claimant is "not

disabled," whether or not the claimant has transferable job skills (See SSR 82–41 and 20 C.F.R. Part 404, Subpart P, Appendix 2) (TR at 745); 10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)) (TR at 745); and 11) The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2005 through May 10, 2013 (TR at 747).

On July 10, 2013, Roeschlaub requested that the Appeals Council review the unfavorable decision. (TR at 728–31) The appeal was untimely (TR at 724–25), and, although Roeschlaub initially requested an extension of time to file the appeal with the Appeals Council (TR at 724), she thereafter decided to appeal directly to the federal district court (TR at 723).[5]

## III. The Facts

A portion of the facts are repeated, verbatim, from the December 5, 2011 decision. (TR at 753–72) Additional facts, including those developed after the remand, shall be duly noted, although, as plaintiff's attorney indicated at the hearing before the ALJ on April 16, 2013, there are no subsequent medical records "showing dramatic changes," only "a record indicating that this is ongoing difficulty and continuing difficulty with function." (TR at 1003).

Roeschlaub, age thirty-nine at the time of the ALJ's initial decision, completed the twelfth grade. (TR at 25) She has past work experience as a home health aide. (TR at 39) Roeschlaub alleges that she has been disabled since December 31, 2005, due to herniated discs, deteriorating discs,

---

5. The plaintiff alleges in her complaint that the Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (# 1 ¶ 6), and the defendant agrees that jurisdiction is proper under that statute (# 14 ¶ 6). *See* 20 C.F.R. § 404.984.

a stroke, an ulcer, and memory loss. (TR at 167).

Roeschlaub was examined by Lawrence Johnson, M.D., an orthopedic surgeon, in January 2006 for her complaints of back and right leg pain. (TR at 536) Dr. Johnson remarked that Roeschlaub ambulated with a mild limp, and she had moderately reduced back range of motion. Dr. Johnson diagnosed probable mild right sciatica. A magnetic resonance imaging ("MRI") scan of the lumbosacral spine on February 17, 2006, showed disc degeneration at L3–L4, L4–L5, and L5–S1, as well as a large disc herniation at L4–L5 eccentric toward the left side. (TR at 538, 591) In 2006, Roeschlaub received multiple epidural steroid injections, as well as a lumbar facet injection.

On September 23, 2007, Roeschlaub was admitted to Saints Medical Center and assessed as having suffered an "acute left hemispheric stroke with an NIH Scale around 15." (TR at 546–47) On December 28, 2009, treating physician Arya Farahmand, M.D., stated that Roeschlaub had "excellent recovery" from her stroke. (TR at 553) When the plaintiff complained of a memory problem in May 2009, Dr. Farahmand noted that "there has been a decline in her sleep and she only sleeps for three hours for no good reason" and that her memory problems were "due to very poor sleep quality." (TR at 899–900).

Roeschlaub reported right shoulder pain and difficulty raising her arm at a February 19, 2009 examination by Dr. Johnson. (TR at 541) Dr. Johnson diagnosed right shoulder pain associated with subacromal bursitis. (TR at 541) During an April 2009 office visit, the plaintiff reported a sore back with some numbness in her left leg. (TR at 545) Roeschlaub was reported to be "walking a bit stiffly," had "mildly reduced back ROM," turned easily on the examining table, and had "minimal tenderness to palpation of the lumbar spine." (TR at 545) Dr. Johnson's impression was "[p]ersistent left sciatic symptoms associated with previously documented L4–5 disk herniation." (TR at 545) The plaintiff was referred for epidural steroid injections and advised to return "if her symptoms intensify." (TR at 545) She again received lumbar epidural injections in 2009 and 2010. (TR at 467, 585, 587).

In August 2009, Roeschlaub complained to Family Nurse Practitioner Kathleen Saucedo ("Saucedo") of low back pain during a physical examination. (TR at 696–97) The plaintiff was advised to follow-up with the pain clinic for her low back pain, ice for ten to fifteen minutes every hour and pace her activities. (TR at 697).

In November of 2009, medical consultant Barbara Trackman, M.D. completed a physical residual functional capacity assessment of the plaintiff wherein Dr. Trackman concluded that Roeschlaub could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk about six hours in an 8–hour day; had an unlimited ability to push and/or pull; could frequently balance, kneel and crawl; could occasionally climb, stoop and crouch; and should avoid concentrated exposure to hazards such as machinery and heights. (TR 527–34).

When the plaintiff was seen by Saucedo with complaints of chronic low back pain in May of 2010, it was noted that:

> The patient complains of chronic low back pain since 2004.... She continues to have low back pain across her lower back with no radiation, no parenthesias, or no changes reported to bowel or bladder. Her back pain limits her activities during the day. She can only stand to wash dishes for 10 minutes. Grocery shopping is limited. She must change

positions frequently whether she is sitting or standing.

TR at 692.

Saucedo referred Roeschlaub to Dr. Bhat for back care and consultation. (TR at 693).

Physiatrist Atual Bhat, M.D., examined Roeschlaub in July 2010, administered steroid injections at the right L4–L5 and L5–S1 joints, and prescribed physical therapy which yielded some improvements in the symptoms. (TR 558–60, 562–63) At a follow-up examination in October 2010, Dr. Bhat stated that while the injections did not significantly change Roeschlaub's pain, surgery was not warranted. (TR at 557).

At a September 28, 2010 appointment with Saucedo, the plaintiff complained of acute back pain, having awoken the previous day "with severe back pain to her right lower back." (TR at 688) While her spine was palpated Roeschlaub appeared comfortable, "[t]here was no grimacing or guarding." (TR at 688) She was advised to ice frequently and follow up with Dr. Bhat. (TR at 689) After an October 4, 2010 visit with Dr. Bhat, the doctor's impression was:

> 1. Linda's symptoms of chronic axial lower back pain have not experienced any significant change with her recent injectional treatments. She did experience a short-term but minimal response to her bilateral L5 transforaminal injection, which is clearly the level where she has her most advanced spondylotic changes. I do feel that she does also have a strong myofascial component to her symptomatology. At this time, I do not feel that there are any surgical indi-

cations warranted, as her symptoms are primarily axial in nature.

TR at 557.

The treatment plan was for the plaintiff to forego further injections due to her lack of response to that treatment and to be referred to the Boston Pain Care Center for "a multi-disciplinary approach to her chronic pain." (TR at 557).

On October 18, 2010, Dr. Johnson stated that his impression of Roeschlaub's back pain was that she had "chronic back pain," and his suggested plan included "weight loss, [a] walking program, back exercises and use of anti-inflammatory medication." (TR at 678) Dr. Johnson specifically stated: "She is not a surgical candidate." (TR at 678) Various x-rays of the plaintiff's cervical spine on October 18, 2010 revealed "[l]ower cervical degenerative changes with foraminal compromise and some intrusion on the central canal." (TR at 679).

On October 28, 2010, Dr. Johnson completed a medical source statement regarding Roeschlaub's ability to engage in physical, work-related activities. (TR at 674–677) Dr. Johnson opined that Roeschlaub could occasionally lift and carry ten pounds and could frequently lift and carry less than ten pounds. (TR at 674) He further opined that Roeschlaub could stand and/or walk less than two hours in an eight-hour workday, and she would need to alternate between sitting and standing.[6] (TR at 674–675) Dr. Johnson continued that Roeschlaub's ability to push and pull with upper extremities was restricted to no more than fifteen pounds, and that she could occasionally climb, balance, kneel, crouch, and stoop but never crawl. (TR at 675) Dr. Johnson also concluded that her ability to maintain attention and concentration on work tasks throughout an eight-hour work-

---

6. Although the form asked the medical source to "provide an explanation of the precise limitation" if Roeschlaub could stand and/or walk less than two hours in an eight-hour workday, Dr. Johnson did not provide any explanation. (TR at 674).

day was not significantly compromised. (TR at 676) Overall and in his own words, Dr. Johnson concluded that Roeschlaub "can only do sedentary, desk type work with limited lifting, pushing, and carrying. She must be allowed to alternate between sitting and standing at her job." (TR at 677).

Roeschlaub followed up with Dr. Farahmand on December 9, 2010. (TR at 908–09) The doctor reported that her prior stroke was stable but that an MRI of the cervical spine showed multilevel disc degenerative disease. (TR at 908–09) The plaintiff was going for a repeat MRI to compare with her initial MRI. (TR at 909) At an appointment on February 3, 2011, Dr. Farahmand reported that the repeat MRI indicated no changes and that there was "still evidence of demyelinating disease on the cervical spine but no enhancement." (TR at 921).

At an appointment for a routine physical examination with Saucedo in November 2011, Roeschlaub indicated that she felt "alright" that day. (TR at 834) She denied any pain or other concerns. (TR at 834) It was noted that the plaintiff had chronic back pain, had been seen by Drs. Bhat and Johnson as well as the pain clinic, had done physical therapy for months and that her pain varied from 4–9/10. (TR at 834) Notes from Dr. Farahmand dated January 10, 2012 reflect that Roeschlaub's recent MRI of her brain and cervical spine revealed no changes and "the C3 lesion on her cord [was] less in intensity." (TR at 931).

In March 2012 the plaintiff was an unrestrained driver in a motor vehicle accident. (TR at 944) She presented at the emergency room of Saints Medical Center the following day with complaints of headache, lower and upper back pain. (TR at 944) Roeschlaub arrived "ambulatory with steady gait," she was "cooperative, alert and oriented x3", and she appeared "in no acute distress." (TR at 944) The plaintiff appeared comfortable although she exhibited tenderness in the neck and lower back. (TR at 945–46) She was instructed to alternate ice and heat to sore areas, take Tylenol or Motrin as needed, no gym for two days and to follow up with her primary care physician if she did not feel better in a few days. (TR at 946).

Saucedo completed a mental medical source treatment statement with regard to the plaintiff in March 2012. (TR at 820–21) Saucedo found Roeschlaub to be markedly limited in eleven of the twenty listed work-related qualities. (TR at 820–21) As support for her assessment, Saucedo wrote:

> chronic back pain—causes emotional imbalance. Pt. is always on time to appointments and she follows through with consults and directions given to her. I feel her self esteem is low. I believe most of her day is spent trying to get through the pain and therefore it would be diff (sic) for her [to] take on new responsibility and tasks.

TR at 821.

On the same day Saucedo also completed a physical medical source statement. (TR at 822–25) Therein Saucedo opined that the plaintiff could occasionally lift and/or carry less than ten pounds; could stand and/or walk for less than two hours in an 8–hour workday (noting that Roeschlaub "can stand for only 10–15 minutes and then needs to change position/rest due to low back pain"); can occasionally climb, balance, kneel, crouch and stoop, but never crawl; is limited to less that two and a half hours a day of reaching and handling; her concentration and ability to maintain focus is limited by pain; and she should not work with machinery or heights or fumes because her balance, judgment and focus are "off." (TR at 822–25).

At the first hearing before the ALJ, Roeschlaub testified that she drove to take her daughter to school or to go to the convenience store, but that she did not go food shopping. (TR at 27) She did not attend school activities, she had no hobbies and primarily just watched television. (TR at 29) The plaintiff had a computer and went online to go on Facebook. (TR at 29) She was not then on prescription pain medication because none of the different pills worked, but she did take Tylenol. (TR at 32–4) The plaintiff testified that she suffered short-term memory loss, but that she received no treatment for it. (TR at 34–5).

On a typical day, Roeschlaub gets up around 6:30 AM, has coffee, wakes up her daughter and brings her to school, then goes home, lies down and watches television. (TR at 35) She tries to get up and do something like sweep, but it hurts too much. (TR at 35–6) During the day she will sit down, then get up, then sit down again, then lay down. (TR at 36) She prepares some of the meals with her daughter's help, but does not really do any household chores; her husband does the food shopping and her son does the laundry. (TR at 36) The plaintiff testified that she could walk for about five minutes, stand for around twenty minutes, and lift a gallon of milk. (TR at 38–9).

According to Roeschlaub, the steroid injections she had worked for only a short period, maybe a week, so she stopped having them done. (TR at 41–2) Physical therapy made the pain worse. (TR at 42) She estimated that she would miss three days out of the week because of pain if she tried to go back to work full time. (TR at 48) At the April 2013 administrative hearing, the plaintiff testified that she had not tried to work since the prior hearing. (TR at 1006).

## IV. The Standard Of Review

Title 42 U.S.C. § 405(g) provides, in relevant part:

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow ... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive ...

■ The Court's role in reviewing a decision of the Commissioner under this statute is circumscribed:

We must uphold a denial of social security disability benefits unless 'the Secretary has committed a legal or factual error in evaluating a particular claim.' *Sullivan v. Hudson*, 490 U.S. 877, 885, 109 S.Ct. 2248, 2254, 104 L.Ed.2d 941 (1989). The Secretary's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

*Manso–Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15, 16 (1 Cir., 1996); *see also Reyes Robles v. Finch*, 409 F.2d 84, 86 (1 Cir., 1969) ("And as to the scope of court review, 'substantial evidence' is a stringent limitation.").

The Supreme Court has defined "substantial evidence" to mean " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *Ortiz v. Secretary of Health & Human Services,* 955 F.2d 765, 769 (1 Cir., 1991). It has been explained that:

> In reviewing the record for substantial evidence, we are to keep in mind that 'issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary.' The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts. We must uphold the Secretary's findings in this case if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support his conclusion.

*Lizotte v. Secretary of Health and Human Services,* 654 F.2d 127, 128 (1 Cir., 1981) (quoting *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222 (1 Cir., 1981)); *Geoffroy v. Secretary of Health and Human Services,* 663 F.2d 315, 319 (1 Cir., 1981) ("In any event, whatever label the parties or the court ascribe to the procedure used to review the Secretary's decision, statute and long established case law make clear that the court's function is a narrow one limited to determining whether there is substantial evidence to support the Secretary's find-

ings and whether the decision conformed to statutory requirements." (citations omitted)).

In other words, if supported by substantial evidence, the Commissioner's decision must be upheld even if the evidence could also arguably admit to a different interpretation and result. *Ward v. Commissioner of Social Security,* 211 F.3d 652, 655 (1 Cir., 2000); *see also Nguyen v. Chater,* 172 F.3d 31, 35 (1 Cir., 1999) (per curiam). Lastly,

> Even in the presence of substantial evidence, however, the Court may review conclusions of law, *Slessinger v. Sec'y of Health & Human Servs.,* 835 F.2d 937, 939 (1st Cir.1987) (per curiam) (citing *Thompson v. Harris,* 504 F.Supp. 653, 654 [D.Mass.1980] ), and invalidate findings of fact that are "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts," *Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

*Musto v. Halter,* 135 F.Supp.2d 220, 225 (D.Mass., 2001).

## V. Discussion

The plaintiff challenges the Commissioner's decision on the grounds that the ALJ's RFC[7] was seriously flawed and that the ALJ's finding on Step 5 must fail.

First with respect to the RFC, Roeschlaub argues the ALJ did not adequately account for the plaintiff's memory loss with the limitation to simple 1–2 step tasks. In advancing this argument, the plaintiff relies on Saucedo's opinion to the effect that Roeschlaub was markedly limited 1) in her ability to remember locations and work-like procedures; 2) the ability to understand and remember very short and

---

**7.** The term "RFC" refers to Roeschlaub's residual functioning capacity as determined by the ALJ.

simple instructions [8]; and 3) the ability to understand and remember detailed instructions. (TR at 820 [9]) The plaintiff's position is unavailing.

Roeschlaub does not dispute the correctness of the ALJ's determination that Saucedo, as a nurse practitioner, is not an "acceptable medical source" within the meaning of the regulations, but rather is an "other source." (TR at 744 [10]) *See* 20 C.F.R. § 416.913(a), (d); SSR 06–03p, 2006 WL 2329939, at *1–2 (Aug. 9, 2006) [11]. As such, Saucedo's opinion would not be entitled to controlling weight, and it "cannot establish the existence of a medically determinable impairment." *See* 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d); SSR 06–03p, 2006 WL 2329939, at *2. "[I]nformation from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06–03p, 2006 WL 2329939, at *2.

While the ALJ considered Saucedo's March 2012 opinion, that opinion was afforded "minimal probative weight" because it was "inconsistent with the record as a whole." (TR at 744) The ALJ noted that the plaintiff's claim of memory loss subsequent to her stroke was "not corroborated by any objective medical findings." [12] (TR at 738) Indeed, in May, 2009, Roeschlaub's treating neurologist, Arya Farahmand, M.D., attributed her complaint of memory difficulty "to very poor sleep quality." (TR at 391–92) In November, 2009, Susan Chip, Ph.D., noted that "Clt. reported that her initial reference to memory loss came from her having been questioned following her stroke. Currently, she does not suffer from memory loss and does not have a TS for this problem. On her current 3373, she does not suggest any problems with memory." (TR at 535) No acceptable medical source attributed any memory loss to Roeschlaub's back pain. Further, the ALJ also observed that such purported "marked" memory limitations were "inconsistent with the claimant's conservative and irregular treatment history, as well as her reported activities of daily living." (TR at 744).

There is substantial evidence in the record to support the ALJ's rejection of Saucedo's opinion that Roeschlaub suffered marked limitations with respect to memory loss.[13] There is no error on this point.

8. Saucedo did not find Roeschlaub to be markedly limited in the ability to carry out very short and simple instructions. (TR at 820).

9. Saucedo related these marked limitations to the plaintiff's "chronic back pain." (TR at 820–21).

10. Saucedo herself noted that she is a family nurse practitioner, *"not a psychologist!"* (TR at 821).

11. Although the plaintiff repeatedly refers to Saucedo as "a treating source" (# 17 at 4, 5), under the regulations, because she is not an acceptable medical source, she does not qualify as a treating source. *See* 20 C.F.R. § 404.1502 ("Treating source means your own physician, psychologist, *or other acceptable medical source* who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." (emphasis added)); 20 C.F.R. § 416.902 (same); SSR 06–03p, 2006 WL 2329939, at *2 ("only 'acceptable medical sources' can be considered treating sources.").

12. The Social Security Administration "need[s] evidence from 'acceptable medical sources' to establish the existence of a medically determinable impairment. *See* 20 CFR 404.1513(a) and 416.913(a)." SSR 06–03p, 2006 WL 2329939, at *2.

13. Although the plaintiff claims error due to the ALJ's failure to apply the special technique detailed in 20 C.F.R. § 404.1520a, by the terms of the regulation the special technique is only used if a claimant has "a medi-

■ Next, the plaintiff argues that the ALJ again erred in her treatment of Dr. Johnson's opinion when formulating her RFC. Specifically Roeschlaub notes that, as she had previously done, the ALJ agreed with and adopted Dr. Johnson's opinions set out in his medical source statement [14] with the exception of his determination that the plaintiff could stand and/or walk less than two hours in an eight-hour workday. According to the plaintiff, the ALJ "did not articulate an adequate rationale for failing to include Dr. Johnson's assessed limitation in her RFC finding." (# 17 at 7).

In the prior appeal, I found "that the ALJ erred in failing to give any indication or explanation as to why she did not credit this evidence from the treating physician." *See Burnett v. Comm'r of Social Sec'y Admin'n,* 220 F.3d 112, 121 (3 Cir., 2000) ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" (internal citations omitted)). *Roeschlaub,* 2011 WL 7477033, at *5. On remand, the ALJ made the following determinations with respect to Dr. Johnson's medical opinion:

> In the present case, I find that Dr. Johnson's opinion is not entitled to controlling weight, as it is inconsistent with other substantial evidence in the case record. Instead, I give his opinions only some weight in the present matter.

Specifically, I concur with Dr. Johnson's assessment insofar as it pertains to the claimant's ability to lift, carry, push or pull objects. I also concur with Dr. Johnson's assessment that the claimant would require an opportunity to alternate between sitting and standing throughout the course of the day (indeed, it appears to be the claimant's primary complaint to many of her providers throughout the medical record). However, I find insufficient evidence in the record to support Dr. Johnson's proffered limitations on the claimant's ability to stand for less than two total hours over the course of an average workday. I find that such a standing limitation is inconsistent with the claimant's conservative, irregular treatment history. I also find that such a standing limitation is inconsistent with the claimant's reported daily activities throughout the record, which have included several tasks that require prolonged periods of standing, such as cooking, cleaning, shopping, and attending appointments. In sum, while I find that Dr. Johnson's assessment is generally consistent with the record as a whole, I have only given weight to his opinion to the extent that it is consistent with the residual functional capacity assessment outlined above.

TR at 744.

Although the ALJ has now set forth her reasons for dismissing Dr. Johnson's stand/walk limitation, the explanation offered is insufficient. [15]

---

cally determinable mental impairment(s)." *See* 20 C.F.R. § 404.1520a. The ALJ found no medically determinable mental impairment in this case.

**14.** The ALJ also did not directly discuss the postural limitations found by Dr. Johnson, to wit, that the plaintiff could only occasionally climb, balance, kneel, crouch and stoop, but

never crawl, nor were these limitations incorporated into the plaintiff's RFC. (TR at 675) On remand, these opinions must also be addressed.

**15.** As explained in a Social Security ruling:

> Adjudicators must remember that a finding that a treating source medical opinion is

The ALJ did not rely any contrary medical opinions or medical test results when disregarding Dr. Johnson's stand/walk limitation. Rather, the "substantial evidence" which she cites is twofold: Roeschlaub's treatment history and her reported daily activities. The problem here is that neither singularly nor combined do these two factors constitute substantial evidence as would adequately support the rejection of a treating physician's medical opinion.

Turning to the plaintiff's "conservative, irregular treatment history," the record is replete with consistent references to the plaintiff's chronic back pain. Over the years Roeschlaub has been prescribed various pain and anti-inflammatory medications, has undergone steroid injections for pain, has participated in physical therapy and ultimately was referred to a pain care center for "a multi-disciplinary approach to her chronic pain." (TR at 557) According to the plaintiff, the majority of these treatments were ineffective or yielded little relief. It is uncontroverted in the medical notes that Roeschlaub is not a surgical candidate.

There is nothing in the record to indicate that the plaintiff's course of treatment has somehow been inadequate or inappropriate. There is also no medical opinion in the record [16] to suggest that the plaintiff's course of treatment somehow negates, or is inconsistent with, Dr. Johnson's func-

tional stand/walk limitation. *Soto–Cedeno v. Astrue,* 380 Fed.Appx. 1, 3 (1 Cir., 2010). In light of these circumstances, it simply was not within the ALJ's province to rely on her own interpretation of Roeschlaub's course of treatment to reach what is essentially a medical opinion that is at odds with that of her treating physician. *Nguyen,* 172 F.3d at 35 ("[N]o medical opinion in the record suggested that claimant's course of treatment was incommensurate with his purported ailment. The ALJ was not at liberty to ignore medical evidence or substitute h[er] own views for uncontroverted medical opinion."); *Manso–Pizarro,* 76 F.3d at 17 ("With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record").

Of course, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common-sense judgment about functional capacity even without a physician's assessment. But when, as now, a claimant has sufficiently put her functional inability to perform her prior work in issue, the ALJ must measure the claimant's capabilities, and to make that measurement, an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person." (internal

---

not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96–2p, 1996 WL 374188, at *4 (July 2, 1996).

16. While it is true that agency medical consultant Dr. Trockman opined, *inter alia,* that the plaintiff could stand and/or walk for about six hours in an eight-hour day (TR at 528), the ALJ did not rely on this evidence in rejecting Dr. Johnson's stand/walk limitation. Indeed, when discussing Dr. Trockman's physical residual functional capacity assessment, the ALJ noted that she gave "greater weight to the opinion of Dr. Johnson, as it is more consistent with the record as a whole." (TR at 745).

citations omitted); *Gordils v. Secretary of Health and Human Services,* 921 F.2d 327, 329 (1 Cir., 1990) ("It is true, too, that we have held—and we reiterate—that since bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record. This principle does not mean, however, that the Secretary is precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as the Secretary does not overstep the bounds of a lay person's competence and render a medical judgment. Obviously, speaking hypothetically, if the only medical findings in the record suggested that a claimant exhibited little in the way of physical impairments, but nowhere in the record did any physician state in functional terms that the claimant had the exertional capacity to meet the requirements of sedentary work, the ALJ would be permitted to reach that functional conclusion himself." (internal citations omitted)). Here, the ALJ overstepped and made a medical judgment beyond her ken.

Because Dr. Johnson provided no explanation for the stand/walk limitation (although such an explanation is requested on the form), this could well be a situation where it was incumbent upon the ALJ to investigate further. As noted in the December 2011 Report and Recommendation,

The ALJ is obligated to recontact a physician if additional evidence was needed to reach a determination on whether the plaintiff was disabled. 20 C.F.R. §§ 404.1512(e), 416.912(e). *See also* SSR 96–5p ('Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.').

*Roeschlaub,* 2011 WL 7477033, at *5, n. 8. If Dr. Johnson was uncooperative, a consultative examination could be ordered. 20 C.F.R. § 404.1512(e).

Secondly, based on the record, it cannot be said that Roeschlaub's daily activities as she described them were necessarily inconsistent with Dr. Johnson's stand/walk limitation. The ALJ wrote that "several tasks [reported by the plaintiff] ... require prolonged periods of standing, such as cooking, cleaning, shopping, and attending appointments." [17] (TR at 744) This seems to be no more than an assumption on the ALJ's part; there is no factual basis for this conclusion. Indeed, it could just as easily be supposed that many of those tasks could well be accomplished, even in the aggregate, with less than two hours of standing within an eight-hour period. An ALJ cannot take something for granted without proof and then rely on it as substantial evidence for rejecting a treating physician's medical opinion.

To summarize, whether considered individually or in combination, Roeschlaub's

---

**17.** The plaintiff testified that during the day she alternates between sitting down, getting up, sitting down again and then lying down. (TR at 36) She tries to do some light household chores, but it hurts too much. (TR at 35–6) She cooks some meals with assistance from her daughter; her husband does the food shopping and her son does that laundry. (TR at 36) That the ALJ did not accept the plaintiff's "occasional reports of limited daily activities" (TR at 743) when judging her credibility does not mean that there is a factual basis for concluding that some of the tasks she does perform require "prolonged periods of standing."

treatment history and her reported daily activities do not constitute substantial evidence upon which the ALJ could rely to reject Dr. Johnson's stand/walk limitation. Consequently, the ALJ has erred in her handling of the treating physician's evidence and this matter must be remanded.[18]

### VI. Conclusion and Order

For all the reasons stated, it is OR-DERED that the Motion to Reverse (# 17) be, and the same hereby is, ALLOWED to the extent that final judgment shall enter REMANDING this case to the Commissioner for further proceedings in accordance with this opinion. It is FURTHER ORDERED Defendant's Motion to Affirm the Commissioner's Decision (# 19) be, and the same hereby is, DENIED.

---

18. The Court need not address the plaintiff's arguments with regard to the ALJ's Step 5 finding.